(No. 43596.—

ROSEMONT BUILDING SUPPLY, INC., *et al.,* v. ILLINOIS HIGHWAY TRUST AUTHORITY *et al.—* (SCHIPPERS, BETAR, LAMENDELLA & O'BRIEN, Intervening Petitioners-Appellees, v. RICHARD B. OGILVIE, Governor, *et al.,* Appellants.)

*Opinion filed March 30, 1972.*

WILLIAM J. SCOTT, Attorney General, of Springfield

(PERRY L. FULLER, DOUGLAS M. REIMER, and D. KENDALL GRIFFITH, Special Assistant Attorneys General, of counsel), for appellants.

SAMUEL J. BETAR and JOSEPH A. LAMENDELLA, both of Chicago (SCHIPPERS, BETAR, LAMENDELLA & O'BRIEN, of counsel), *pro se.*

MR. JUSTICE DAVIS delivered the opinion of the court:

The plaintiffs, Rosemont Building Supply, Inc., and James Cuzzone, filed a complaint in the circuit court of Du Page County seeking a declaratory judgment that the Illinois Highway Trust Authority Act (Ill.Rev.Stat. 1969, ch. 121, par. 101—1 *et seq.*) was unconstitutional, and seeking to enjoin any expenditures or action thereunder. The suit was filed, as a taxpayers' class action, on behalf of the plaintiffs and all others similarly situated.

The defendants therein were the Trust Authority created under the challenged Act; Richard B. Ogilvie, Governor of the State of Illinois; Adlai E. Stevenson, III, Treasurer; William F. Cellini, Director of the Department of Public Works and Buildings; William J. Scott, Attorney General; and Michael Howlett, Auditor of Public Accounts.

The Act gave the proposed Trust Authority the power to function as a governmental corporation for the stated purpose of "constructing, reconstructing, improving, equipping, and furnishing State highways, bridges, viaducts, interchanges and roadside rest areas," and all such purposes were referred to therein as "projects" (Ill.Rev. Stat. 1969, ch. 121, par. 101—4). Under the Act the Authority had no power to tax, but was empowered to provide funds and to "borrow money, make and issue negotiable notes, bonds, and other evidence of indebtedness or obligations (herein called 'bonds') of the Authority, not exceeding $2,000,000,000 in the aggregate, and

not exceeding a total of $1,000,000,000 in the first 4 years after the effective date of this Act, for the acquisition, construction, reconstruction and improvement of highway projects in such amounts as to defray the ordinary and contingent expenses of the Authority, and in such amounts as necessary for defraying the cost of such projects and to secure the payment of such bonds, or any part thereof, by pledge or deed of trust of all or any of its revenues, rentals and receipts and to make such agreements with the purchasers or holders of such bonds or with others in connection with any such bonds, whether issued or to be issued, as the Authority shall deem advisable and, in general, to provide for the security of said bonds and the rights of the holders thereof." Ill.Rev.Stat. 1969, ch. 121, par. 101—4(i).

The Act also appropriated $200,000 or so much thereof as may be necessary to the Highway Trust Authority Fund from the Road Fund for the purpose of paying the ordinary and contingent expenses of the Authority. This sum, however, was to be repaid so that under the Act there would be no invasion whatsoever of Road Funds. Even though appropriated, this sum was never paid over to the Highway Trust Authority Fund. Further exposition of the Act is unnecessary to our consideration of the issue in the instant case.

The plaintiffs challenged the constitutionality of the Act. After the action was filed, the parties agreed that the defendants would in no way implement the Act until after the final decision on its validity, and thereby hearing on the plaintiffs' request for injunctive relief was obviated. The trial court held the Act constitutional.

On appeal, we found the Act unconstitutional in its entirety. *(Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority (1970), 45 Ill.2d 243.)* The plaintiffs' attorneys thereupon petitioned the trial court for an allowance against the defendants of attorneys' fees and costs, in addition to the sum of $15,000 theretofore

paid by the plaintiffs to them for services rendered in the case.

On June 15, 1970, the trial court entered an order which found *inter alia,* that the plaintiffs' attorneys had exhibited a high degree of skill and had spent much time in the preparation, conduct and presentation of the case, and had, by the prosecution of a valid class action, conferred substantial benefits on the class represented, in that through their efforts large sums of money were preserved to the taxpayers of Illinois that would otherwise have been expended because of the illegal legislation; and that, therefore, the attorneys were entitled, in equity, to fees in the amount of $66,666.66, and costs in the amount of $508.71. The court further ordered that the defendants, in their respective capacities as elected officials of the State of Illinois, jointly and severally, pay said sums to the plaintiffs' attorneys.

The appellants here contend: (1) that the judgment appealed from is a judicial encroachment on the power of the legislature in violation of article III of the Illinois constitution; (2) that the claim for attorneys' fees is an action against the State, and is, therefore, prohibited by section 26 of article IV of the Illinois constitution; (3) that the attorneys are not entitled, in any event, to an award of fees, and that the State is not subject to a judgment for costs.

In support of their contention that funds are available to pay fees, the appellees cite *People ex rel. Conn v. Randolph (1966), 35 Ill.2d 24,* and *Regan v. Babcock (1936), 196 Minn. 243, 264 N.W. 803. Randolph* was a *mandamus* action to require payment of fees to attorneys appointed to represent indigent defendants in a lengthy and involved murder prosecution. The $500 statutory maximum was found to be unreasonable considering the enormity of the task *(voir dire* jury examination alone having consumed nine weeks). Further, the appointment of counsel was clearly required by Federal and State

constitutions, and the legislature had made an appropriation to the Department of Public Safety for the purpose of making payment to appointed counsel under such circumstances. The amount of the fees, not the right to them, was the real issue in *Randolph.* The distinction between *Randolph* and the instant case is apparent.

In *Regan,* the suit resulted in the avoidance of six contracts entered into by the Minnesota Commissioner of Highways. The State intervened in taxpayers' suits in equity, to cancel contracts for paving State highways, to restrain the contractors and State Commissioner from carrying out the contracts, and to recover money which the State illegally paid out. The State agreed, during the litigation, that it would pay 80% of the contract price and retain 20% until the litigation was concluded. The court ordered the State to pay the reasonable value of work done by the contractor in each case. Where the services rendered did not equal the 80% previously paid, the contractors paid the difference into court, and the action resulted in a savings of $390,000 to the State. This sum constituted a fund under the court's jurisdiction and out of which it could properly award fees. Again, the cited case is readily distinguishable from the case at bar.

This is not the usual class action in which attorneys fees are allowed from a fund which was brought into court by the plaintiff or plaintiffs who sued as members of a class. Here no fund was involved and, even though the plaintiffs contend that this circumstance is irrelevant, it does present the question of whether the recognized rule for the payment of attorneys fees and costs in a typical class action should be extended to litigation wherein the plaintiff seeks a declaratory judgment that a legislative enactment is unconstitutional.

While fees and costs are awarded more freely today than in the past, we deem it improper to expand this doctrine under the circumstances of this case. This determination will not deprive the people generally of the

benefit of such actions. In *Hoffman v. Lenhausen, 48 Ill.2d 323,* at pages 329 and 330, we stated: "*** the principle of *stare decisis* remains a basic tenet of our legal system, and one of the consequences is that a legal doctrine established in a case involving a single litigant characteristically benefits all other similarly situated."

For the reason herein stated, we find it unnecessary to consider other contentions advanced by the appellees and hold that the fees and costs herein were erroneously awarded, and that the judgment must be reversed.

*Judgment reversed.*