THE CITY OF CHICAGO, Plaintiff and Counterdefendant-Appellee, v. MARSHALL KORSHAK *et al.*, Defendants and Counterplaintiffs-Appellees (Martin Ryan *et al.*, Intervenors and Appellants-Movants).

First District (3rd Division)   No. 1—92—2604

Opinion filed September 6, 1995.—Rehearing denied December 20, 1995.

598

Clinton A. Krislov, Lisa E. Waisbren, John J. Lowrey, and Anne M. Burke, all of Chicago, and Paul Karasik, of Highland Park, for appellants.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Stuart D. Fullerton, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

JUSTICE RIZZI delivered the opinion of the court:

This is an appeal by attorney Clinton Krislov from a judgment denying his petition for attorney fees as attorney for a class of intervenors, Martin Ryan *et al.* (Intervenors), in a suit brought by plaintiff City of Chicago (City) against defendants Marshall Korshak *et al.*, as trustees of four City pension funds. We affirm.

This litigation began in 1987 when the City sued the trustees (Trustees) of its four pension funds: (1) Policemen's Annuity and Benefit Fund; (2) Firemen's Annuity and Benefit Fund; (3) Municipal Employees', Officers' and Officials' Annuity and Benefit Fund; and (4) the Laborers' and Retirement Board Employees' Annuity and Benefit Fund. In its complaint, the City alleged that State law specified the monthly amounts that the City was to raise through its tax levy for the cost of the annuitants' health care and the rest of the cost was to be borne by the annuitants who wanted coverage. The City sought an order declaring how much the City was required to pay, and the City also sought a recovery of the large overpayments already made.

The Trustees filed counterclaims alleging that the City was obligated to continue to absorb the increasing costs of health care despite the limitations on its legal obligations as contained in the relevant statutes. The trial court dismissed the City's suit to the extent it sought a refund, but the case proceeded to adjudicate the City's prospective obligations, if any, over and above what is specified by statute. Intervenors, a group of annuitants who retired before 1987, joined the Trustees in opposing the City in the suit. The Intervenors were represented by Krislov.

In June 1988, the City and the Trustees reached a settlement of the suit. The settlement provided that the City and the Trustees agreed to sponsor legislation requiring the City to absorb at least 50% of the health care costs of the annuitants. The settlement and the implementing legislation required the City to bear that obligation through 1997. At that time, if the parties have not reached a permanent agreement, the settlement terminates, but the settlement does not affect any obligations otherwise imposed by law on the City. The settlement allowed the City to increase the rates it charged most annuitants for health care coverage because the settlement increased the share of annuitants' health care costs to be borne by the annuitants themselves. Shortly after the settlement was reached, the legislature enacted legislation to implement its terms.

In the meantime, both before and after the legislature acted, the Intervenors and Krislov objected to the settlement and requested the trial court to conduct a fairness hearing to determine whether the Trustees had properly agreed to the settlement. They also sought to enjoin any increase in contributions that the annuitants were required to make toward the cost of health care. The trial court certified the Intervenors as a class and ordered the fairness hearing requested by the Intervenors.

At the fairness hearing, Krislov presented evidence opposing the settlement and renewed his request for an injunction of its implementation. Following the fairness hearing, Krislov again sought an injunction and moved for summary judgment against any change in the terms of annuitants' health care coverage. In his opposition to the settlement, Krislov told the trial court that the settlement would have "devastating" results and that the "Court should not allow this."

Despite Krislov's protestations and opposition, on December 12, 1989, the trial court entered an order approving the settlement, finding that the settlement was fair and reasonable and in the best interest of the class members, given the risk to the annuitants that they could lose coverage if the City prevailed in the litigation. On December 15, 1989, the trial court entered orders implementing the settlement and dismissing the Intervenors' claims.

The Intervenors appealed the trial court's approval of the settlement. On January 12, 1990, Krislov filed a motion in the appellate court for a stay of the trial court's orders pending appeal. Krislov argued that if the settlement was not stayed it would place a "substantial number of retirees either in financial hardship, on welfare or the like." He also argued that if the settlement was not enjoined it would impose "potentially ruinous increases" in the an-

nuitants' health care costs and that the Trustees had breached their fiduciary duties to the annuitants by endorsing the settlement. In addition, Krislov contended that the settlement was the product of a "collusion" between the City and the Trustees.

The City objected to a stay of the settlement. On February 14, 1990, however, the appellate court stayed enforcement of the trial court's orders approving the settlement and its implementation. As a result of the stay by the appellate court, the City did not raise the rates that it charged the annuitants for health care coverage during the pendency of the appeal. On November 28, 1990, the appellate court affirmed the judgment of the trial court in all respects and held that the settlement should be implemented. (*City of Chicago v. Korshak* (1990), 206 Ill. App. 3d 968, 565 N.E.2d 68.) The Intervenors filed a petition for rehearing, a petition for leave to appeal and a petition for *certiorari* to the United States Supreme Court, all of which were denied.

In the interim, on January 16, 1990, Krislov filed a petition for attorney fees in the trial court for his role in the proceedings. He asked for $221,000 in fees and costs. The trial court took the matter under advisement. On January 24, 1990, however, Krislov filed two class action suits in the Federal district court seeking to block the implementation of the settlement. Both of Krislov's suits were dismissed, and he appealed.

After all his attempts to block and nullify the settlement failed, in May 1992, Krislov renewed and supplemented his petition for attorney fees in the circuit court. The renewed and supplemented petition (fee petition) seeks $622,000 in fees and costs. The fee petition sought fees for what Krislov did prior to the trial court's approval of the settlement and fees for Krislov's failure to nullify the settlement by appeals.

The City opposed the fee petition on the basis that Krislov is not entitled to any fee under the circumstances. The trial court entered a judgment denying Krislov's fee petition. The trial court found that there was no common fund created under which attorney fees could be charged and that the Intervenors were not prevailing parties. In addition, the trial court stated: "This court finds no logic in awarding attorney's fees to a class that on the one hand contends its efforts improved the settlement, and on the other hand opposes the same settlement. Counsel cannot have it both ways." The present appeal by Krislov has ensued.

Krislov contends that there are seven bases under which he is entitled to receive attorney fees in this case. They are common fund, substantial benefit, the Illinois Pension Code, the Illinois Insurance

Code, the Illinois Attorney's Lien Act, Federal civil rights statutes, and bad faith. These contentions must be reviewed with the understanding that a trial court's ruling on attorney fees will not be disturbed unless a clear abuse of discretion has been demonstrated. *DeBruyn v. Elrod* (1983), 121 Ill. App. 3d 290, 293, 459 N.E.2d 971, 973.

■ We first address Krislov's claim that he is entitled to receive attorney fees from a common fund. Despite Krislov's claim, the trial court found that no common fund was created. We agree. The settlement sets out the obligations of the parties with regard to the cost of annuitant health care and it requires the City to pay at least 50% of the cost of annuitants' health care through 1997, but it does not call for the City to make any lump sum payment to the annuitants or their pension funds. Rather, the City makes its payments under the settlement to health care providers who serve the annuitants. The City is plainly not required to make, and it has not made, any payment under the settlement into a specific, segregated fund under the control of the court. Thus, no common fund exists and none was created.

Moreover, contrary to Krislov's contention, the stay of the settlement by the appellate court did not create a common fund. Instead the stay merely delayed the implementation of the new rates provided by the settlement for the annuitants' contributions to their health care plan while leaving the old rates intact. It follows that there is no common fund here because neither the settlement nor the stay involved any segregated payment to the pension funds or the annuitants, or to the trial court, to establish a common fund.

A common fund allowing for attorney fees is one that is created or preserved for the benefit of a class. It must be within the control of the court and must have been created as a result of the class action. (See *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 442-43, 356 N.E.2d 524, 525-26; *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority* (1972), 51 Ill. 2d 126, 130, 281 N.E.2d 338, 340.) Illinois courts have rejected attempts to recover attorney fees where, as in the present case, there is no common fund under the control of the court. See *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 329, 269 N.E.2d 465, 469; *Hamer*, 64 Ill. 2d at 440-41, 356 N.E.2d at 526-27.

Here, it is indisputable that the trial court did not create any sort of segregated, court-administered fund. Under the circumstances, there can be no common fund recovery of attorney fees in this case. Krislov cites two cases in which the courts did not require a segregated, court-supervised fund as a prerequisite for an award of fees under a common fund basis: *Baier v. State Farm Insurance Co.* (1977),

66 Ill. 2d 119, 361 N.E.2d 1100, and *Taylor v. State Universities Retirement System* (1990), 203 Ill. App. 3d 513, 560 N.E.2d 893. Neither of those cases is relevant here, however, because they involve the law of subrogation and were decided within a subrogation context. They plainly do not change the well-settled law relating to the common fund requirement that, outside of the subrogation context, a segregated, specific fund must be brought under the control of the court. (See *Moriarty v. Rutter* (1985), 129 Ill. App. 3d 867, 869, 473 N.E.2d 569, 571; *Process Color Plate Co. v. Chicago Urban Transportation District* (1984), 125 Ill. App. 3d 885, 891, 466 N.E.2d 1033, 1037; *DeBruyn v. Elrod* (1983), 121 Ill. App. 3d 290, 292, 459 N.E.2d 971, 973; *Client Follow-Up Co. v. Hynes* (1982), 105 Ill. App. 3d 619, 627-29, 434 N.E.2d 485, 491.) Since there was no common fund created in this case, Krislov's contention that he is entitled to recover attorney fees under a common fund theory is untenable.

■ Krislov's contention that he is entitled to an award of attorney fees even if no common fund was created because he created a substantial benefit for the annuitants is also unfounded. In the first instance, the Illinois Supreme Court has repeatedly rejected the substantial benefit theory as postulated by Krislov. (*Hamer v. Kirk*, 64 Ill. 2d at 442-43, 356 N.E.2d at 528; *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority*, 51 Ill. 2d at 130-31, 281 N.E.2d at 340.) In *Hamer*, the supreme court held that "in the absence of a fund, a plaintiff's attorney is not entitled to attorney's fees merely because he has conferred a benefit upon members of a class." 64 Ill. 2d at 442, 356 N.E.2d at 528.

Moreover, in *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 269 N.E.2d 465, the Illinois Supreme Court held:

> "The final problem concerns the application of attorneys for the plaintiffs in the consolidated action for an allowance of costs and reasonable attorneys fees. These motions were denied, and in our opinion the ruling of the trial judge was correct. Several considerations set this case apart from the usual situation in which attorneys fees are allowed from a fund brought into court by one who sues as a member of a class. No fund was involved in this case. The attorneys for the plaintiffs say that this circumstance is irrelevant, because the trial judge refused to enter an order which would have created such a fund. Again we think, however, that the ruling of the trial court was correct. We are aware of no authority under which the process of tax collection and distribution could have been interrupted to divert from the governmental bodies that had levied the taxes an amount fixed by the court as fees for the attorneys for the plaintiffs." 48 Ill. 2d at 329-30, 269 N.E.2d at 469.

In addition, attorney fees can only be awarded against those who benefitted from whatever recovery the attorney created. No fees can be awarded against the City on this theory because Krislov's efforts did not benefit the City. Also, Krislov's efforts to undo the settlement belie his claim to attorney fees from anyone. To the extent the settlement confers a benefit on the class Krislov represents, that benefit has been conferred not because of but despite Krislov's efforts.

Krislov's claim that his role in obtaining a stay of the settlement in the appellate court was beneficial to the Intervenors is belied by his other claims. If, as he claims, the settlement was beneficial, Krislov should not have sought to have its implementation stayed and his efforts in that regard were detrimental rather than beneficial. If, as he claims, the stay was beneficial, Krislov cannot also claim credit for the benefits flowing from the settlement he impeded. Attorney fees are not awarded for opportunism.

■ Next, relying upon the Illinois Pension Code (40 ILCS 5/1—101 (West 1992)) (the Code), Krislov contends that "attorneys fees must be allowed to promote the availability of counsel for enforcing the participants' pension code rights." Absent a common fund, an attorney may obtain fees from a party other than his client only by virtue of a fee-shifting statute. *Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488-89, 426 N.E.2d 1204, 1206; *Hamer v. Kirk*, 64 Ill. 2d at 437, 356 N.E.2d at 525.

Krislov bases his claim on the Code by analogizing it with the Federal Employee Retirement Income Security Act (29 U.S.C. § 1001 (1988)). Since there is no fee-shifting provision in the Code, however, Krislov's attempts to engraft such a provision by analogizing it to other statutes is rejected outright. Statutes that provide for awarding attorney fees must do so with specific language and not by hypothesis. *Qazi v. Ismail* (1977), 50 Ill. App. 3d 271, 273, 364 N.E.2d 595, 596-97.

Krislov argues that the Code should be interpreted to allow attorney fees in order to enable annuitants to protect their interests. Krislov's argument is in effect the private attorney general argument that attorney fee awards should be available even though no statutory authority exists in order to enable litigants to vindicate important interests, such as rights under the Code. The Illinois Supreme Court, however, has rejected the private attorney general doctrine as a basis for awarding attorney fees. (*Hamer*, 64 Ill. 2d at 442, 356 N.E.2d at 527-28.) The *Hamer* court refused to accept the argument that fees should be awarded to provide attorneys with an incentive to enforce legal rights. Under the circumstances, it would be inappropriate for the judiciary, without legislative guidance, to reallocate the burdens of litigation as urged by Krislov.

In addition, the private attorney general doctrine if applied requires that the party seeking fees secure some important legal right before being entitled to fees. Here, Krislov did not prevail. He did not produce the settlement, and his efforts to overturn it failed. He did obtain a stay of the settlement for a period but the stay was ultimately lifted and he lost the appeal. Plainly, Krislov vindicated no legal right under the Code and he therefore would not be entitled to any fee for redressing any alleged violation of the Code.

■ Krislov next claims that "participants' counsel are entitled to fees under the Illinois Insurance Code (215 ILCS 5/155 (West 1992)), since the City's conduct in initiating its action against the funds was vexatious and unreasonable." Krislov states that "the Illinois Insurance Code permits the court to award fees, plus additional amounts, in any action by or against an insurance company over the company's insurance policies, where it appears that the company's action or delay is vexatious and unreasonable."

Krislov claims that "as applied to this case, the City is acting as a company for purposes of the Insurance Code, and has thus subjected itself to liability thereunder and the issue of this litigation is its liability under its annuitant insurance program/policy for which it charges a monthly premium." Therefore, Krislov points out that under the Code, "company" is defined as follows: " 'Company' means an insurance or surety company and shall be deemed to include a corporation, company, partnership, association, society, order, individual or aggregation of individuals engaging in or proposing or attempting to engage in any kind of insurance or surety business ***." 215 ILCS 5/2(e) (West 1992).

Krislov's argument cannot bear water because in this case, the City is not engaging "in any kind of insurance or surety business," and the Code is not applicable to home rule municipalities such as the City. Krislov cites *Bloese v. Board of Education of Community Unit School District No. 300* (1985), 138 Ill. App. 3d 460, 485 N.E.2d 1276, in support of his claim that the Insurance Code is applicable to the City. *Bloese*, however, did not involve a home rule municipality. In addition, *Bloese* did not address the issue of whether a municipality is subject to the Code.

The invalidity of Krislov's contention is illustrated by what the court stated in *Clayton v. Village of Oak Park* (1983), 117 Ill. App. 3d 560, 453 N.E.2d 937. In *Clayton*, the court held:

"The term 'company' under the regulatory provisions of the Code contemplates an entity engaged or attempting to engage in an 'insurance or surety business.' (Ill. Rev. Stat. 1981, ch. 73, par. 614(e); see Ill. Rev. Stat. 1981, ch. 73, pars. 733(1), 733—3.) The

phrase 'insurance business' is not defined in the Code, but it cannot be construed as identical to 'insurance'; otherwise, the word 'business' would be without effect. (See *People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171.) The legislature must be presumed to have deliberately added the word 'business' (*State ex rel. Farmer v. Monsanto Co.* (Mo. 1974), 517 S.W.2d 129, 132), and that the term is to be used in its ordinary sense. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492.) The word 'business' has been defined as ' "any particular occupation or employment, habitually engaged in, especially for livelihood or gain." ' (*Svithiod Singing Club v. McKibbin* (1942), 381 Ill. 194, 199, 44 N.E.2d 904.) An insurance company is an ordinary business corporation whose policies are obtained for ordinary business purposes. (*Peterson v. Manhattan Life Insurance Co.* (1910), 244 Ill. 329, 91 N.E. 466.) An insurance business transaction anticipates payment by the assured of a consideration proportionate to the insurer's risk of having to pay the potential loss. *Vredenburgh v. Physicians Defense Co.* (1906), 126 Ill. App. 509, 511.

The Program here cannot be said to have been established as an 'occupation' for 'livelihood or gain' for the village. *** The ordinance and its Program here focus upon a governmental purpose and do not place the village in the insurance business." 117 Ill. App. 3d at 563-64, 453 N.E.2d at 941.

In *Clayton*, the court further held:

"In 1971, article VIII$^1$/$_2$ (Ill. Rev. Stat. 1981, ch. 73, pars. 743.1 *et seq.*) was added to the Code, which relates to insurance holding company systems. It includes a special definition of 'company' under section 131.1(d), which has 'the same meaning as 'company' as defined in section 2 of this Code, except that it does not include agencies, authorities or instrumentalities of *** a State or political subdivision of a State.' (Ill. Rev. Stat. 1981, ch. 73, par. 743.1(d).) The express exclusion from this special definition of political subdivisions of a State and the absence of such an exclusion in section 2 of the Code lead plaintiffs to conclude that the general definition contained in section 2 must be read to include political subdivisions within its terms. Plaintiffs overlook the broad home rule powers enjoyed by municipal entities, such as Oak Park, under article VII, section 6(a) of the 1970 Illinois Constitution, to '*** exercise any power and perform any function pertaining to its government and affairs ***.' The omission of such an exclusion from the general definition in section 2 of the Code, written in 1937, cannot be construed to deny this fundamental grant of power by the 1970 Illinois Constitution. Involvement by home rule units in various forms of insurance programs pertaining to their govern-

ment and affairs has been upheld in other jurisdictions as well. See, *e.g.*, *Butterworth v. Boyd* (1938), 12 Cal. 2d 140, 82 P.2d 434; *City of Wichita v. Wyman* (1944), 158 Kan. 709, 150 P.2d 154.

Further, the intergovernmental cooperation provisions of the constitution authorize home rule entities to contract and otherwise associate with other public agencies or private corporations in any manner not prohibited by law. (Ill. Const. 1970, art. VII, sec. 10(a).) Section 6 of the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1981, ch. 127, par. 746) allows governmental units to contract for joint self insurance and further liability or loss protection in such areas as may need insurance protection. When the foregoing provisions are read together with the definition of an insurance holding company system (Ill. Rev. Stat. 1981, ch. 73, par. 743.1(c)), 'two or more affiliated persons, one or more of which is an insurance company as defined *** ' in section 2, section 131.1(d) simply makes clear that even if a home rule entity is associated with other agencies or corporations in an insurance holding company system, it is nevertheless exempted from Code regulations. The absence of an express exclusion of political subdivisions from the section 2 definition, therefore, is further explained and is of no consequence to the issues here presented.

Finally, the rights of the sovereign are not impaired by a general legislative enactment governing private rights unless the enactment expressly makes the sovereign accountable. (*Department of Revenue v. Appellate Court* (1977), 67 Ill. 2d 392, 396, 367 N.E.2d 1302; *Division of Old Age Assistance v. Lyman* (1939), 373 Ill. 27, 30, 25 N.E.2d 49.) Since neither the State nor its municipalities or subdivisions are overtly mentioned in section 2, the Code does not regulate local governmental activities.

Much of plaintiffs' brief focuses on whether the contracts arising from the Program constitute insurance contracts. The issue, however, is not whether the agreements are valid insurance contracts, but whether the Equity Assurance Program comprises an insurance business. We hold that it does not for the aforestated reasons." 117 Ill. App. 3d at 564-65, 453 N.E.2d at 941-42.

In the present case, the Illinois Pension Code, which specifically provides that the City must contribute a specified amount for the annuitants' health care coverage, focuses upon a governmental purpose and plainly does not place the City in the insurance business as contemplated by the Code. (See 40 ILCS 5/5—167.5, 6—164.2, 8—164.1, 11—160.1 (West 1992).) Moreover, the Code is not applicable to home rule municipalities.

In addition, section 155 of the Insurance Code, which is relied upon by Krislov, deals with an insurer's bad-faith refusal to pay

claims. Bad faith does not exist in this case. The trial court did not find, and there is nothing to support a finding, that the City's conduct was vexatious or unreasonable. Krislov's argument is totally unfounded. He is plainly not entitled to attorney fees pursuant to the Code.

■ Krislov's next contention is that he is entitled to attorney fees by virtue of the Illinois Attorneys Lien Act. (770 ILCS 5/1 (West 1992).) The law is well established, however, that the Attorneys Lien Act is not a fee-shifting statute. In *Brazil v. City of Chicago* (1942), 315 Ill. App. 436, 439, 43 N.E.2d 212, 214, the court held that "the client who hires the lawyer is liable for the services of his lawyer, and the attorney's lien statute does not change this rule." Moreover, Krislov's contention is also untenable because the Attorneys Lien Act is not enforceable against a municipality. *Brazil*, 315 Ill. App. at 443, 43 N.E.2d at 214-16.

■ Krislov next contends that "fees are also supported by the Civil Rights Act, 42 U.S.C. § 1988, since the participants have prevailed by protecting their vested rights from termination." The Intervenors' claims, however, were never Federal civil rights claims. Rather, their claims were grounded solely on State law contract and estoppel principles. In *Caputo v. City of Chicago* (1983), 113 Ill. App. 3d 45, 48, 446 N.E.2d 1240, 1242, the court held that "our State courts should award attorney fees under 42 U.S.C. sec. 1988 (1976) only in the following instances: (1) where Federal statutory or constitutional law is the basis for a decision in favor of a claimant, or (2) where Federal law remains intimately involved in the case until a settlement or consent decree is entered into." These circumstances do not exist in the present case. It follows that Krislov's contention is without merit.

In addition, Krislov's insistence that he prevailed in this case is totally unwarranted. He obtained no beneficial relief. He did not produce the settlement, and his efforts to set it aside failed. Nor was there any benefit to his clients from the stay that was obtained in the appellate court in an appeal in which he lost. Krislov prevailed on nothing to benefit his clients and is therefore not entitled to attorney fees.

■ Krislov also contends that "the City's bad faith in bringing this action is also grounds on which fees may be awarded." Krislov's contention is not premised on any legal or factual representations made by the City, but rather is premised on his claim that the City brought this suit to offset the liability it had incurred to the pension funds as a result of another case, *Ryan v. City of Chicago* (1986), 148 Ill. App. 3d 638, 499 N.E.2d 517. The trial court in the present case,

however, made no finding that the City brought this action for improper reasons and we find nothing to support a bad-faith claim against the City for anything that it did in regard to this entire matter. Instead, this court has already held that the settlement that is the subject matter of this case is "both reasonable and in the best interests of all concerned parties," and "the Intervenors' challenges [are] without merit." (*City of Chicago v. Korshak* (1990), 206 Ill. App. 3d 968, 974, 975, 565 N.E.2d 68, 72.) Plainly, there is no evidence of bad faith by the City in this case, and there is no merit to Krislov's contentions.

Accordingly, the judgment of the trial court denying Krislov's petition for attorney fees is affirmed in all respects.

Affirmed.

TULLY and CERDA, JJ., concur.