Alphonso NICHOLSON, Plaintiff,

v.

**MARINE CORPS WEST FEDERAL CREDIT UNION, Defendant.**

No. 97 C 25.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 28, 1997.

---

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Charles Emil Petit, Edelman & Combs, Chicago, IL, for Alphonso Nicholson.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Alphonso Nicholson ("Nicholson") is suing Defendant Marine Corps West Federal Credit Union ("the Credit Union") over the repossession of Nicholson's car, which he purchased for less than $10,000. Because the amount in controversy falls far short of

the $50,000 required to invoke federal diversity jurisdiction, Nicholson's complaint is dismissed.

## Background

According to Nicholson's complaint, Nicholson resides at 7045 South Washtenaw in Chicago, Illinois; the Credit Union has its principal place of business at Camp Pendleton, California. (Complaint ¶¶ 3, 4.) In October of 1994, Nicholson purchased a car for slightly less than $10,000. (*Id.* ¶ 5 & Ex. A.) He put roughly $500 down and financed the balance with a loan from the Credit Union, which involved a total finance charge of about $2,600. (*Id.*) In October of 1996, the Credit Union had the car repossessed from Nicholson's residence in Chicago. (*Id.* ¶ 6.) At that time, the car was worth approximately $6,000. (*Id.* ¶ 12.) In November of 1996, the Credit Union sent Nicholson a Notice of Sale, which stated that the Credit Union would sell the car. The Notice of Sale did not state when the sale would occur. (*Id.* ¶¶ 7, 14 & Ex. B.) Nicholson demanded that the Credit Union return the car to him, but the car was not returned. (*Id.* ¶ 10.)

In Count I of his complaint, Nicholson alleges that the Credit Union violated the Illinois Uniform Commercial Code ("the UCC"). (*Id.* ¶ 14.) Specifically, Nicholson alleges that the notice of sale he received from the Credit Union violated the UCC by failing to specify when his vehicle would be sold. (*Id.* ¶¶ 7, 8, 9, 14, 15 & Ex. B.) Nicholson brings Count I on behalf of the class of all persons who received such defective notices of sale from the Credit Union. (*Id.* ¶ 16.) In Count II, Nicholson alleges that the Credit Union violated Section 17200 of the California Business and Professions Code ("the California Code"), which makes it unlawful for a business to engage in any "unfair or fraudulent business act or practice." (*Id.* ¶¶ 24, 27.) Nicholson brings Count II as a "private attorney general" enforcing the California Code. (*Id.* ¶¶ 23, 25.) In Count III, Nicholson alleges that the Credit Union committed the tort of conversion, by wrongfully repossessing his car. (*Id.* ¶¶ 30, 31.)

Nicholson claims that this court has diversity jurisdiction because he and the Credit Union are citizens of different states, and "[t]he amount in controversy *for Count II* is over $50,000." (*Id.* ¶ 2; emphasis added.) He states that venue is proper in the Northern District of Illinois because his "claim arose here." (*Id.*)

## Analysis

■ A party filing a complaint in federal court has the burden of establishing federal jurisdiction over the subject matter of the suit. *The Wellness Community–Nat'l v. Wellness House,* 70 F.3d 46, 49 (7th Cir.1995) (citation omitted). "The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged." *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986). Generally speaking, a court should not dismiss a complaint for lack of federal jurisdiction without notice and a hearing. *Shockley v. Jones,* 823 F.2d 1068, 1073 (7th Cir.1987). However, the court may dismiss a complaint sua sponte if the court lacks jurisdiction over the subject matter and "the jurisdictional defect is clearly incurable." *Id. see, e.g., Controlled Env't Sys. v. Sun Process Co.,* 936 F.Supp. 520 (N.D.Ill. 1996) (dismissing complaint sua sponte for lack of subject-matter jurisdiction; no diversity of citizenship); *BCGS, L.L.C. v. Fisher,* No. 96 C 4314, 1996 WL 417585 (N.D.Ill. July 22, 1996) (same; amount in controversy insufficient); *Janton v. MWRD of GC,* No. 96 C 287, 1996 WL 22957 (N.D.Ill. Jan. 22, 1996) (same; no federal question).

Plaintiff Alphonso Nicholson alleges that the court has diversity jurisdiction because he and the Credit Union are citizens of different states and the amount in controversy for count II of his complaint exceeds $50,000. (Complaint ¶ 2.) A federal district court has diversity jurisdiction over an action between citizens of different states where the amount in controversy exceeds $50,000, "exclusive of interest and costs." 28 U.S.C. § 1332(a). As a general rule, "the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, unless it appears to a legal certainty that the claim is for less than that required by the rule." *NLFC, Inc. v. Devcom Mid–*

*Am., Inc.,* 45 F.3d 231, 237 (7th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

In this case, careful analysis of Nicholson's complaint reveals to a legal certainty that Nicholson's claim is for less than $50,000, and this jurisdictional defect is clearly incurable.

## COUNT I: THE UNIFORM COMMERCIAL CODE

■ As noted above, Nicholson alleges in Count I that the Credit Union violated the Illinois Uniform Commercial Code ("the UCC"). (Complaint ¶ 14.) According to Nicholson, this violation makes the Credit Union liable for statutory damages "equal to the finance charge plus 10% of the cash price" of the car. (*Id.* ¶ 15.) The total finance charge was $2,617.28. (*Id.* ¶ 5.) The purchase price was $9,848.16 (*id.*), and ten percent of that amount is $984.82. Adding together the finance charge ($2,617.28) and ten percent of the purchase price ($984.28) produces a grand total of $3,602.10. This sum clearly falls short of the $50,000 amount required to invoke the diversity jurisdiction of this court.

It makes no difference that Nicholson brings Count I on behalf of the class of all persons who received defective notices of sale, since "multiple persons' claims cannot be combined to reach the minimum amount in controversy." *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 931 (7th Cir.1996) (citation omitted) (citing *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)); *Anthony v. Security Pac. Fin. Services, Inc.,* 75 F.3d 311, 315–16 (7th Cir.1996).

## COUNT II: THE CALIFORNIA BUSINESS AND PROFESSIONS CODE

Perhaps recognizing that the allegations in Count I fail to satisfy the amount in controversy needed to invoke diversity jurisdiction, Nicholson asserts that "[t]he amount in controversy for Count II is over $50,000." (*Id.*

¶ 2.) In Count II, Nicholson alleges that the Credit Union violated Section 17200 of the California Business and Professions Code ("the California Code"), which makes it unlawful for a business to engage in any "unfair or fraudulent business act or practice." (*Id.* ¶¶ 24, 27.) Nicholson brings Count II as a "private attorney general" enforcing the California Code. (*Id.* ¶¶ 23, 25.) By way of relief he seeks restitution, an injunction, costs, and fees. (*Id.* ¶ 28.)

Unfortunately for Nicholson, the court cannot enforce the California Code. In diversity cases, whether the court applies the substantive law of California, Illinois, or some other state depends on the choice-of-law rules employed by Illinois courts. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Hystro Products, Inc. v. MNP Corp.,* 18 F.3d 1384, 1387 (7th Cir.1994).[1] Under Illinois choice-of-law rules, this court will apply Illinois substantive law unless a conflict of law exists and makes a difference in the outcome of the litigation. *International Adm'rs, Inc. v. Life Ins. Co. of N. Am.,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985); *Zurich Ins. Co. v. Heil Co.,* 815 F.2d 1122, 1123 (7th Cir.1987) (citing *International Adm'rs*). Thus, if there were no conflict between California law and Illinois law, the court would apply Illinois law.

In this case, the California Code lets a plaintiff file suit as a "private attorney general" acting on behalf of "the general public." (Complaint ¶¶ 23, 25.) *See* California Business and Professions Code § 17204 ("Actions for any relief pursuant to this chapter shall be prosecuted ... by any person acting for the interests of itself, its members or the general public."); However, Illinois does not let plaintiffs bring lawsuits in this manner. *Hamer v. Kirk,* 64 Ill.2d 434, 1 Ill.Dec. 336, 340, 356 N.E.2d 524, 528 (1976); *City of Chicago v. Korshak,* 276 Ill.App.3d 597, 213

---

1. Nicholson alleges that the court has both diversity and supplemental jurisdiction (Complaint ¶ 2). Whether count II is premised on diversity jurisdiction or supplemental jurisdiction has no bearing on the court's choice-of-law analysis. Like the choice-of-law rule for diversity claims, "the choice-of-law rule for pendent state claims should be that of the forum." *Mastrobuono v.*

*Shearson Lehman Hutton, Inc.,* 20 F.3d 713, 719 (7th Cir.1994) (citation omitted), *rev'd on other grounds,* —— U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *accord, A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1463 (D.C.Cir.1995); *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1413 (N.D.Ill. 1996).

Ill.Dec. 144, 149, 658 N.E.2d 1165, 1170 (1st Dist.1995), *appeal denied,* 167 Ill.2d 551, 217 Ill.Dec. 663, 667 N.E.2d 1056 (1996); *Fischer v. Brombolich,* 246 Ill.App.3d 660, 186 Ill. Dec. 553, 555, 616 N.E.2d 743, 745 (5th Dist.), *appeal denied,* 153 Ill.2d 559, 191 Ill.Dec. 618, 624 N.E.2d 806 (1993). Because there is a conflict between California law and Illinois law, the court turns to the specific choice-of-law principles employed by Illinois courts.

■ In making choice of law determinations, Illinois courts now employ the "most significant relationship" analysis described in the Restatement (Second) of Conflicts. *Palmer v. Beverly Enterprises,* 823 F.2d 1105, 1109–10, 1112 (7th Cir.1987); *Balentine v. Union Mortgage Co.,* No. 91 C 8213, 1994 WL 34256, at *5 (N.D.Ill. Feb. 2, 1994). The factors involved in this analysis vary with the area of law at issue (*e.g.,* contracts, torts, property). In an action that alleges fraud in connection with a contract, some courts employ a torts analysis, while other courts employ a contracts analysis. *Compare Palmer,* 823 F.2d at 1112 (torts analysis) *with Sanders v. Lincoln Serv. Corp.,* No. 91 C 4542, 1993 WL 112543, at *3 (N.D.Ill. April 5, 1993) (contracts analysis). Following the Seventh Circuit's approach in *Palmer,* this court employs a torts analysis.

■ Under the Restatement (Second) of Conflicts, a court determines which state has the most significant relationship to a tort action by considering

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Wilcox v. Incandela,* No. 91 C 5730, 1992 WL 137165, at *4 (N.D.Ill. June 1, 1992) (quoting Restatement (Second) of Conflicts) (formatting supplied); *see Palmer,* 823 F.2d at 1112 (applying these factors). Under Illinois law, "[t]he law of the state where the injury oc-

curred applies unless another state has a more significant relationship to the occurrence and parties." *Wilcox,* 1992 WL 137165, at *4 (citation omitted); *see Balentine,* 1994 WL 34256, at *5 (" [T]he presumption applied by Illinois courts is that the law of the state where the injury occurred applies in a tort case.") (citation omitted).

■ In the case before the court, any possible injury to Nicholson occurred in Illinois, where he lived, where his car was repossessed, and where he received the "Notice of Sale" at issue. Therefore, the court presumes that Illinois law applies unless California has more significant contacts than Illinois based on the factors listed above. With respect to factor (a), any injury occurred in Illinois, as already noted. With respect to factor (b), the conduct giving rise to the injury occurred in Illinois, where the car was repossessed,[2] and in California, where the Credit Union mailed the letter to Nicholson. With respect to factor (c), Nicholson is a resident of Illinois, while the Credit Union is based in California. With respect to factor (d), the relationship between the Credit Union and Nicholson is based primarily in Illinois: The relevant documents were apparently executed in Illinois, Nicholson lived in Illinois, and the car was repossessed in Illinois. Overall, factors (a) and (d) implicate Illinois law, while factors (b) and (c) implicate both Illinois and California law. Because the injury occurred in Illinois, and because on balance the relevant factors favor Illinois law, the court has no trouble whatsoever concluding that Illinois has the most significant relationship to this lawsuit, and the court applies Illinois substantive law rather than California substantive law.

■ The court would reach the same result if it applied contracts analysis instead of torts analysis. When choosing what law to apply in a contracts case, Illinois courts consider "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation, and business

---

2. Indeed, Nicholson states unequivocally that his claim arose in the Northern District of Illinois.

(Complaint ¶ 2.)

of the parties." *Palmer*, 823 F.2d at 1109–10 (citations omitted) (alterations in *Palmer*). Here, the contract was apparently negotiated and executed in Illinois, performance by Nicholson took place in illinois, the car was in Illinois, and Nicholson lived in Illinois. The fact that the Credit Union is based in California does not come close to outweighing the factors favoring Illinois. *See Hystro Products*, 18 F.3d at 1387 ("Michigan law is not applicable because, although [defendant] was incorporated in Michigan, neither the negotiations for nor the performance of the contract had any connection to Michigan.")

Because Illinois has the most significant relationship to this lawsuit, the court must apply Illinois substantive law rather than California substantive law. Simply put, the court cannot grant relief under the California Code. For this reason, Nicholson cannot premise subject matter jurisdiction on his allegation that "[t]he amount in controversy for Count II is over $50,000."

■ Even if the court were able to enforce the California Code, the relief sought in Count II would fall far short of the $50,000 required to satisfy the amount in controversy requirement of 28 U.S.C. § 1332. Under the California Code, private plaintiffs are limited to (1) injunctive relief and (2) restitution in the form of disgorgement of wrongfully-ob-

tained money or property. California Business and Professions Code § 17203; *E.W. French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1401 (9th Cir.1989); *MAI Sys. Corp. v. UIPS*, 856 F.Supp. 538, 541 (N.D.Cal.1994). Apart from such injunctive and restitutionary relief, a private plaintiff may not recover damages (compensatory or otherwise) under the California Code. *French & Sons*, 885 F.2d at 1401; *MAI Sys.*, 856 F.Supp. at 541; *Baugh v. CBS, Inc.*, 828 F.Supp. 745, 757 (N.D.Cal.1993).

In light of these principles, it is apparent that the total value to Nicholson of any injunction could not possibly exceed the value of the repossessed car, which could not possibly exceed $10,000.[3] Litigation expenses and costs do not figure into the equation because the diversity statute explicitly excludes "interest and costs." 28 U.S.C. § 1332(a). Attorney fees do not figure into the equation because a private plaintiff cannot recover attorney fees under the California Code. *See In re High Fructose Corn Syrup Antitrust Litig.*, 936 F.Supp. 530, 533 (C.D.Ill.1996) (citations omitted) (attorney fees excludable from amount in controversy unless statute provides for payment of such fees); *Shadoan v. World Sav. and Loan Ass'n*, 219 Cal. App.3d 97, 108 n. 7, 268 Cal.Rptr. 207 (1st Dist.1990) (California Code does not provide

---

3. In a diversity action seeking injunctive relief, the court measures the amount in controversy by examining the value of the rights the plaintiff seeks to protect. *Indiana Hi–Rail Corp. v. Decatur Junction Ry. Co.*, 37 F.3d 363, 365–66 (7th Cir.1994). Under normal circumstances, "the court can measure the value of the relief requested from the perspective of either the plaintiff or the defendant." *International Gateway Communications, Inc. v. Communication Telesystems Int'l, Inc.*, 922 F.Supp. 122, 125 (N.D.Ill.1996) (citing *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 394 (7th Cir.1979)).

"In a diversity-based class action seeking primarily money damages," however, "allowing the amount in controversy to be measured by the defendant's cost would eviscerate [the rule] that the claims of class members may not be aggregated in order to meet the jurisdictional threshold." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1050 (3rd Cir.), *cert. denied*, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993) (citations omitted); *see Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 931 (7th Cir.1996) ("[M]ultiple persons' claims cannot be combined to reach the minimum amount in controversy.")

(citation omitted). In such a case, the court must examine the value of the injunctive relief to individual plaintiffs rather than the overall cost to the defendants. *Packard*, 994 F.2d at 1050; *see In re Amino Acid Lysine Antitrust Lit.*, 918 F.Supp. 1181, 1188 n. 8 (N.D.Ill.1996) (agreeing with *Packard* analysis); *In re Brand Name Prescription Drugs Antitrust Lit.*, Nos. 96 C 4323, 94 C 897, MDL 997, 1996 WL 568793, at *6 (N.D.Ill. Oct. 2, 1996) (same).

Because Nicholson's lawsuit is a diversity-based action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate the rule that the claims of multiple plaintiffs may not be aggregated to meet the jurisdictional threshold. For this reason, the court examines the value of the injunctive relief to Nicholson himself, not the cost of the injunction to the Credit Union. Even if the court considered the cost to the Credit Union, it would be limited to any administrative expense involved in stating the sale date in notices of sale sent to people like Nicholson. It is hard to imagine how such an administrative expense could catapult Nicholson's claim over $50,000.

for payment of attorney fees to private plaintiffs). Thus, even if the court could enforce Count II, the total amount in controversy would not exceed $10,000.

## COUNT III: CONVERSION

■ In Count III, Nicholson alleges that the Credit Union committed the tort of conversion by wrongfully repossessing his car. (Complaint ¶¶ 30, 31.) He seeks compensatory damages, punitive damages, and costs. (*Id.* ¶¶ 32, 33.) There are two major problems with this count of his complaint.

First, Count III fails to state a claim upon which relief can be granted. It is well-established that

[a] proper complaint for conversion must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a defendant over a plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property.

*Voutiritsas v. Intercounty Title Co.*, 279 Ill. App.3d 170, 215 Ill.Dec. 773, 784, 664 N.E.2d 170, 181 (1st Dist.1996) (citation omitted). With respect to the second element, Nicholson never asserts that he had lawful ownership of his car when it was repossessed, and he never offers any facts that would support such an assertion. With respect to the third element, Nicholson never asserts that he had a right to immediate, absolute, and unconditional possession of the car when it was repossessed, and he never offers any facts that would support such an assertion. Even with respect to the first element, the facts in the complaint do not support Nicholson's assertion that the Credit Union's repossession was "wrongful"; the only wrongdoing discussed in the complaint involves the dispossession of repossessed collateral, not the repossession of the collateral itself.

■ Second, even if Count III stated a claim, nothing in Nicholson's complaint

supports an award of punitive damages with respect to Count III. As the Seventh Circuit recently noted, the Illinois courts "take a rather dim view of punitive damages." *Medcom Holding Co. v. Baxter Travenol Lab. Inc.*, 100 F.3d 1241, 1255 (7th Cir.1996) (citation omitted). The Illinois Supreme Court has limited the availability of punitive damages to

conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with a reckless indifference to the rights of others.

*Sharrow v. General Motors Acceptance Corp.*, 938 F.Supp. 518, 520 (C.D.Ill.1996) (quoting *Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 150 Ill.Dec. 510, 515, 563 N.E.2d 397, 402 (1990)). This outrageous conduct must go above and beyond the conduct required to establish the elements of the underlying tort. *Johnson v. George J. Ball, Inc.*, 248 Ill.App.3d 859, 187 Ill.Dec. 634, 641, 617 N.E.2d 1355, 1362 (2nd Dist.1993) (citations omitted); *Racich v. Mid Continent Builders Co.*, 755 F.Supp. 228, 230 (N.D.Ill. 1991) (citations omitted).

In the instant case, there is not a single fact in Nicholson's complaint that supports his bare assertion that the Credit Union's conduct in repossessing Nicholson's car was "wanton and malicious." As noted above, the complaint does not even establish that the repossession was "wrongful"—let alone "wanton and malicious." There is no fact indicating that the Credit Union had an evil motive when it repossessed Nicholson's car, or that the Credit Union exhibited "reckless indifference" to Nicholson's rights in the car—if he had any. Since nothing in the complaint engenders the kind of outrage typical of a crime, nothing in the complaint supports an award of punitive damages in this case.[4]

---

4. Two old but highly relevant cases are *Jensen v. Chicago and Western Indiana R.R. Co.*, 94 Ill. App.3d 915, 50 Ill.Dec. 470, 483, 419 N.E.2d 578, 596 (1st Dist.1981) (repossession of antique locomotive based on mistaken claim of title did "not reflect an intentional or wanton disregard of plaintiff's rights" that would justify punitive damages); and *Brown v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 281 F.Supp. 82, 85 (N.D.Ill.1968) (complaint alleging conversion dismissed for lack of federal jurisdiction, as repossession of automobile could not justify punitive damages).

The Seventh Circuit recently cautioned that "[w]hen a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, [courts] should scrutinize that claim closely." *Anthony v. Security Pac. Fin. Services, Inc.*, 75 F.3d 311, 315 (7th Cir.1996) (citations omitted). After closely scrutinizing Nicholson's claim for punitive damages, the court concludes that Nicholson could not under any circumstances recover punitive damages in Count III of his complaint. Therefore, punitive damages have no relevance to the amount in controversy in this case. *See Anthony*, 75 F.3d at 316 (finding no basis for punitive damages, excluding them from amount in controversy); *Racich*, 755 F.Supp. at 230 (same).[5]

In short, Count III does not state a claim upon which relief can be granted. Even if it did, Nicholson would not be entitled to punitive damages. At best, he would be entitled to compensatory damages in the form of replacement transportation and (perhaps) lost wages during the time he sought replacement transportation. It is hard to imagine that such compensatory damages could exceed $20,000—twice the purchase price of the car at issue.[6]

**SUMMARY OF ALL THREE COUNTS**

The most that Nicholson could recover on Count I is $3,602.10. He cannot recover anything on Count II because this court cannot enforce the California Code.[7] The most he can recover on Count III—in the unlikely event that he can state a claim for conversion—is $20,000. Therefore, the most he can recover on all three counts is $23,602.10. This sum is less than half the $50,000 required to invoke this court's diversity jurisdiction.

*Conclusion*

Because the amount in controversy falls fall short of the $50,000 required to invoke federal diversity jurisdiction, the complaint filed by Plaintiff Alphonso Nicholson against Defendant Marine Corps West Federal Credit Union is dismissed.

---

5. Even if Nicholson could somehow recover punitive damages, they would not approach $50,-000—by themselves or in combination with other amounts recovered in this case. *See Hampton v. Mitsubishi Acceptance Corp.*, No. 91 C 878, 1991 WL 32764, at *1 (N.D.Ill. March 6, 1991) (conversion action remanded to state court because any punitive damages "would not even begin to approach the $50,000 floor for federal jurisdiction").

6. Count III also seeks "costs." As noted above, litigation expenses and costs do not figure into the amount in controversy because the diversity statute explicitly excludes "interest and costs." 28 U.S.C. § 1332(a).

7. Even if this court could enforce the California Code, Nicholson would only receive restitution in the amount of $10,000. He would still not be able to reach the $50,000 minimum.