NORMAN PARADISE, Plaintiff-Appellee, v. AUGUSTANA HOSPITAL AND HEALTH CARE CENTER, Defendant-Appellant.

First District (5th Division)   No. 1—90—0678

Opinion filed November 27, 1991.

Michael J. Daley and Stephen G. Kehoe, both of Nisen & Elliott, of Chicago, for appellant.

Mitchell Edelson, Jr., and Stephen C. Sadin, both of Mitchell Edelson & Associates, of Chicago, for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Norman Paradise, filed suit against defendant, Augustana Hospital and Health Care Center, for breach of a consulting contract. In assessing the evidence at trial, the court construed two letters by defendant and a third letter by plaintiff to determine the effective date of termination of the contract. The court found that the contract was effectively terminated 30 days after the date of defendant's second letter. Therefore, the court awarded plaintiff breach of contract damages in the form of his unpaid monthly salaries and bonus payments through that date. The trial court also invoked, *sua sponte*, the theory of *quantum meruit* and awarded plaintiff his bonus payments for several months after the effective date of termination of the contract. Defendant appealed. We consider: (1) whether the trial court correctly construed the letters to determine the effective date of termination of the contract; and (2) whether the trial court erred by invoking, *sua sponte*, the theory of *quantum meruit* upon which plain-

tiff was awarded his bonus payments for several months after the effective date of termination of the contract.

We affirm in part and reverse in part.

Relevant to our disposition are the following facts as disclosed by the record. In July 1985 Norman Paradise (plaintiff) and Augustana Hospital and Health Care Center (defendant) entered a consulting contract pursuant to which, in return for a $25,000 annual salary, plaintiff would promote defendant's "position" and assist in the negotiation of contracts between defendant and approved nursing homes. The original contract also provided for a periodic review to determine if plaintiff merited "additional benefits such as a monthly stipend or bonus." Later in July the contract was expressly amended to provide plaintiff with "a bonus of seven (7) percent of revenues produced from nursing home laboratories business" up to a maximum annual compensation of $50,000.

The contract's term lasted one year but included automatic renewals for additional one-year extensions. Therefore, written notice was required to terminate the contract. Section 2.1 of the contract governed termination and it expressly stated:

"Either party may terminate this contract at any time, with or without cause, upon thirty (30) days prior written notice."

If such termination were to occur after the initial one-year term, plaintiff agreed to refrain from acting as either a consultant or employee of any clients he may have obtained for defendant under the contract.

By November 1986 plaintiff had performed under the contract for a period of 16 months during which time he had been paid his agreed salary and bonus. On November 18 plaintiff had a meeting with defendant's president, David Jensen. Jensen maintains that he informed plaintiff that his services would be terminated on December 31. Plaintiff maintains that the issue of termination of the contract was not discussed at the meeting; rather, the two discussed a prospective change in the compensation under the contract. At any rate, on November 19 Jensen drafted a letter addressing the "results" of the meeting. The letter stated in part:

"After our discussion of the current status, opportunities, financial efforts, and other problems of our nursing home laboratory and other services, we conclude that you would continue with your efforts, under our existing compensation arrangement, through December 31, 1986.

\* \* \*

During this period, I'm sure Tony or his designees will be contacting you for information for their deliberations."

After plaintiff read the letter, he contacted his immediate supervisor with defendant, Dr. Rothenberg, to inquire whether the letter was intended to terminate the contract. Dr. Rothenberg told him the letter was not intended to terminate the contract. Plaintiff, therefore, continued to appear at defendant hospital through January 1987.

On January 15, 1987, plaintiff met with defendant's vice-president of administration, Anthony DiLorenzo. DiLorenzo told plaintiff that defendant intended to reorganize its affiliations with the nursing homes. DiLorenzo then handed plaintiff a letter which stated in part:

"This letter will serve as notice to you, that it is the intention of [defendant] to conclude its Nursing Home Consulting Agreement with you effective January 16, 1987."

DiLorenzo maintains that the letter was a clarification that plaintiff's services were intended to be terminated by Jensen's November 19 letter. Therefore, the termination would be effective the next day and not 30 days hence. Defendant paid plaintiff his compensation through January 15.

In response, plaintiff contacted his attorney. The attorney advised him that because the letter called for termination upon one day of notice it did not satisfy the 30-day notice requirement of section 2.1 of the contract and, therefore, the contract was not effectively terminated. Nonetheless, plaintiff cleaned out his desk at the hospital.

Plaintiff maintains that he continued to perform services under the contract (in the form of telephone calls to his clients) through the end of April. Defendant denies any knowledge of these continued services or the acceptance of any benefits. However, defendant stipulated that, apart from the efforts of plaintiff after the middle of January, plaintiff's clients continued to generate monthly revenues ranging from $30,000 to $60,000.

On May 1 plaintiff drafted his own letter stating his intention to terminate the contract with defendant, effective May 31.

Plaintiff then filed a complaint for damages alleging a single count of breach of the consulting contract. Defendant answered the complaint admitting the existence of the contract but stating that plaintiff had been paid in full for all services provided prior to the contract's termination.

After a trial on the merits, the trial court found that Jensen's letter of November 19 did not constitute notice of termination and that DiLorenzo's letter of January 15 did constitute notice of termination but the termination was not effective until 30 days thereafter (pursu-

ant to section 2.1 of the contract) instead of the one day provided for in the letter. The court also found that the revenues of plaintiff's clients increased after the effective termination and that plaintiff was entitled to the 7% bonus payments through April 30 based upon the theory of *quantum meruit*. The court then entered its first order which (1) granted plaintiff leave to amend his complaint *instanter* to add a second count in *quantum meruit* so that the pleadings would conform to the proofs; (2) found for the plaintiff on the breach of contract count in the amount of $2,083; and (3) found for the plaintiff on the *quantum meruit* count in the amount of $7,802. The trial court left open the question whether plaintiff had the right to his bonus payment for the month of May. Subsequently, the plaintiff moved to supplement the record with evidence of plaintiff's services for that month. The court then entered its second order increasing the *quantum meruit* award to $9,927 to account for the May bonus. Plaintiff's total award was $12,010.

Defendant filed motions to vacate or modify the judgments. The trial court denied the motions and this appeal followed.

Opinion

■ Our first issue is whether the trial court erred in its determination that DiLorenzo's letter of January 15, and not Jensen's letter of November 19, constituted sufficient written notice to terminate the contract. Under Illinois law, sufficient notice is that which clearly discloses to persons of ordinary intelligence what is intended. (*Wendl v. Moline Police Pension Board* (1981), 96 Ill. App. 3d 482, 421 N.E.2d 584.) We believe that the plain language of defendant's two letters supports the trial court's construction.

Jensen's letter of November 19 indicates that the December 31 "effective date" contemplates a change in the "existing compensation agreement." This language applies more directly to the salary or bonus terms and not to the termination of the contract. Furthermore, if in fact defendant was contemplating termination of the contract, it is apparent that a final decision had not been reached because the letter called for plaintiff to continue to provide defendant with information "for their deliberations."

■ DiLorenzo's letter of January 19 plainly expressed defendant's intent to terminate the contract. The opening sentence states "[t]his letter will serve as notice to you, that it is the intention of [defendant] to conclude its Nursing Home Consulting Contract with you effective January 16, 1987." We note that it is not required that adequate written notice specifically contain the word "termination."

(*Pullman, Inc. v. International Brotherhood of Boilermakers* (E.D. Penn. 1972), 354 F. Supp. 496.) Therefore, the letter constituted sufficient notice because it clearly disclosed to a person of ordinary intelligence that defendant intended to terminate the contract. However, the letter's one-day effective date violated section 2.1 of the contract, which required 30 days' notice. Therefore, the trial court also correctly determined that February 14, and not January 16, was the effective date of termination of the contract.

The next issue is whether the trial court erred by invoking, *sua sponte*, the theory of *quantum meruit* upon which plaintiff was awarded his bonus payments for the period between January 16 and May 31. Because we hold that plaintiff is not entitled to *quantum meruit* damages as a matter of substantive law, we limit ourselves to that issue.

■ In the law, *quantum meruit* means literally "as much as he deserves." It is an expression that describes the extent of liability on a contract implied by law, and is predicated on the reasonable value of services performed; the basis of recovery is the receipt by a defendant from a plaintiff of a benefit which is unjust for him to retain without paying for it. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.) However, a plaintiff is not entitled to recovery under *quantum meruit* where there was no expectation that defendant would pay for the services rendered. *Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.* (1982), 104 Ill. App. 3d 357, 432 N.E.2d 999; *In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 461 N.E.2d 1075; *Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 487 N.E.2d 974.

■ Here, the plaintiff did not have a reasonable expectation that defendant would continue to pay the bonus payments. The contract itself does not in any way provide plaintiff with the right to bonus payments, in the form of a commission schedule or otherwise, after the contract's termination. Defendant, on its part, clearly expressed its intent to terminate the contract in DiLorenzo's January 15 letter and the trial court held that the letter was sufficient notice to terminate the contract. Plaintiff proceeded, pursuant to the advice of his attorney, on the slim basis that the letter technically did not terminate the contract. The *Industrial Lift* court responded to this situation as follows:

> "[Plaintiff] knew the contract could be terminated as it was terminated, and thus knew when [he] made the changes that [he]

might not be compensated under the contract to the extent [he] hoped to be compensated. Now that a situation plaintiff knew could occur has occurred, plaintiff seeks to shift a risk it assumed in light of the contract to defendant. In essence, plaintiff is seeking to use quasi-contract as a means to circumvent the realities of a contract it freely entered into." (*Industrial Lift*, 104 Ill. App. at 361, 432 N.E.2d at 1002.) Stated otherwise, DiLorenzo's letter of January 15 "was a clear expression of dissent which could not have led the plaintiff to entertain a reasonable expectation of payment." (*Western National Bank*, 139 Ill. App. 3d at 547, 487 N.E.2d at 978.) Accordingly, we hold that plaintiff was not entitled to damages on a theory of *quantum meruit* because plaintiff had no reasonable expectation that defendant would continue to pay the bonus payments for the months in question.

In summary, we affirm the trial court's determination as to the termination date of the contract and the breach of contract damages. We reverse the trial court on the issue of plaintiff's right to damages on a theory of *quantum meruit*.

Affirmed in part; reversed in part.

GORDON and McNULTY, JJ., concur.