JAMES M. BOERSMA, Plaintiff-Appellee, v. AMOCO OIL COMPANY, Defendant-Appellant.

First District (3rd Division) No. 1—93—2690

Opinion filed September 13, 1995.—Rehearing denied December 20, 1995.

Rooks, Pitts & Poust, of Chicago (Wayne F. Plaza, Charles A. LeMoine, and Patrick M. McMahon, of counsel), for appellant.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Stephen S. Phalen, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, James M. Boersma, sued defendant, Amoco Oil Company, for his injuries incurred when the roadway on which plaintiff was working in defendant's Indiana refinery collapsed after steam lines broke beneath it allegedly due to defendant's negligence. Defendant appeals from a jury verdict in favor of plaintiff and argues that the trial court erred in applying Illinois substantive law in the trial of the accident, instructing the jury about the doctrine of *res ipsa loquitur*, barring several defense witnesses, excluding and admitting certain evidence, denying defendant's request for a mistrial, and denying defendant's request for a remittitur of damages. We reverse and remand.

Before opening statements, the trial court ruled that Indiana law would apply because Indiana had the most significant contacts with the occurrence.

Plaintiff worked as an insulator for a company that contracted with defendant to insulate pipes in defendant's refinery. Steam lines were used in the refinery to heat pipes so that refinery products could flow through them. While working at the refinery on March 21, 1985, plaintiff noticed some steam blowing across the roadway which he thought was coming from a steam trap. The roadway on which plaintiff was walking collapsed as a result of a steam leak, and plaintiff was injured when he fell on his back.

Defendant's operations maintenance coordinator at the time of the accident, Allen D. Williamson, testified at trial on cross-examination by defendant that this steam line leak was not catastrophic. He testified on redirect examination by plaintiff that there were two catastrophic leaks within the past five years. An objection to the testimony was overruled. He also testified that there were two or three noncatastrophic leaks in the previous three years. Defendant moved for a mistrial. The trial court ruled that defendant "opened the door" to the testimony of subsequent leaks by asking Williamson whether the steam line leak was catastrophic.

A neurological surgeon, Dr. Charles Chuman, testified to his diagnosis of plaintiff's condition. Plaintiff suffered from sick nerve roots, a break in a bone of the spine called spondylosis, and a slippage of the spine called spondylolisthesis. Plaintiff's main problems were the break in the spine and the instability that resulted. Plaintiff's injury was severely incapacitating, and he had resulting back and leg pain. Plaintiff's spinal break and slippage were caused by a trauma. The sort of injury that plaintiff sustained in the accident was consistent with the production of a spinal fracture. He had no evidence that plaintiff had a preexisting problem.

According to Dr. Chuman, when plaintiff engaged in an activity where the weight of his upper body pushed down on the broken area of the bone, it caused a forward slippage of the bone, compressing the nerve that went into the leg and producing pain down the leg. Plaintiff was not able to return to any activity that required bending, twisting, and lifting. Any type of construction activity would cause plaintiff pain. Plaintiff would experience a lot of back pain if he went pleasure boating because of waves. For plaintiff to sit in a boat with a little rocking would be better than sitting in one position for a long time.

Plaintiff testified that he had no prior back trouble. He could no longer work as an insulator because of severe back pain. He had considerable pain when he turned his neck. His legs were very weak. He could bend over only about three-quarters of the way. He could not twist. He could sit for 90 minutes or 2 hours. He could walk only two blocks. He had either fair days or bad days. On the bad days he could just sit in a chair. He used a boat two or three times a month only when the weather was calm. His condition had worsened.

Plaintiff testified about working after the accident. He did some house painting, but he could not finish due to pain. He did some odd jobs for two months on and off at a video store owned by Walter Siggins and by plaintiff's wife, Josephine, when she was married to Walter Siggins. He labelled some movies; he put some grooves in some shelves. He climbed up a ladder only once, handing material to his brother, who was doing electrical work. He did some painting and assisted in installing a tile floor in the Sigginses' house. He never did any work on his homes in Illinois. He did a few odd jobs at a hair salon such as hanging pictures and plumbing.

Plaintiff's brother and a son also worked at the video store, and the money they earned there was given to him. He never talked about his injury or avoiding surveillance with Richard Siggins. He did not try to avoid surveillance while he worked at the video store.

The superintendent of maintenance engineering at the refinery, Kenneth P. Panozzo, was questioned at trial whether he had taken any measurements in the area of the accident. Plaintiff objected on the basis that Panozzo's expert opinion had not been disclosed. The trial court barred the witness from giving an expert opinion about the leak.

There was no testimony from any witness giving an opinion about the cause of the steam leak.

Peter F. Dignan testified that he was a Chicago police officer who conducted some surveillance of plaintiff and videotaped plaintiff in May 1992. The surveillance videotape was shown to the jury. The

trial court permitted Dignan only to testify about what he videotaped and not about his observations of or conversations with plaintiff.

A neurological surgeon retained by plaintiff's employer, Dr. Marshall Matz, testified for the defendant to the following at his videotaped evidence deposition, which was shown to the jury. He gave plaintiff a neuromuscular examination in January 1986, and the results were normal. He reexamined plaintiff in May 1992, and the neurological findings were not consistent with a lower back problem. Plaintiff's spondylolisthesis was a preexisting condition, and it did not cause any nerve root compression. Plaintiff did not have the kinds of complaints that indicated a broken spine or back. There was no objective evidence to support plaintiff's claim of disability. Plaintiff could be employed in his usual capacity.

Dr. Matz had testified in court proceedings 21 times from 1990 through 1992 and 20 times were for defendants. In part, plaintiff's cross-examination of Dr. Matz was as follows:

"Q. Are you familiar with the case of Helga and Larry Burs vs. Anthony Ascew and Coplee [sic] Press, went to trial in Lake County back in May 1990?

A. I'm afraid I don't recall that.

Q. Do you remember signing Answers to Interrogatories in that case which you said you testified 56 times for that law firm within the last 15 years?

A. Impossible.

Q. That's not possible?

A. Impossible.

\* \* \*

Q. Perhaps I can show you this Illinois Verdict Reporter issue, '90, issue for May of 1990, and see if that would refresh your recollection regarding the Burs case.

\* \* \*

Q. You have had a chance to look at that copy of the Verdict Reporter that I provided to you?

A. Yes.

Q. Does that refresh your recollection in regards to how many times you have testified for the law firm of Modesto, Reynolds?

A. I haven't—no, it does not, and these numbers, as I mentioned to you earlier, are clearly either mistaken or this is a typographical error or perhaps it relates to defense cases and not specifically this law firm."

Plaintiff did not introduce any evidence to prove this attempted impeachment.

The trial court barred certain testimony that will be summarized later in this opinion. The trial court indicated that it was reducing

the number of witnesses to avoid redundancy and because of the ill-being of witnesses towards each other (presumably arising out of plaintiff's remarriage to the woman who was formerly married to one of the proposed defense witnesses).

Before opening statements, the court granted plaintiff's motion to strike defendant's Indiana affirmative defenses. Defendant was ordered to file a single affirmative defense based on Illinois law regarding comparative negligence.

At the jury instruction conference, defendant objected to the giving of any Illinois pattern instructions to the extent that they were covered by Indiana law. The trial court stated that Illinois instructions were more logical and sensible than Indiana instructions. The jury was given Illinois instead of Indiana instructions.

The jury found in favor of plaintiff, whom they found to be 15% contributorily negligent. Plaintiff was awarded $1,527,512 in damages: $12,074.14 for medical expenses; $150,000 for future medical expenses; $200,000 for pain and suffering; $75,000 for future pain and suffering; $320,000 for lost earnings; $640,000 for future lost earnings; and $400,000 for disability.

At the hearing on defendant's post-trial motions, the trial court acknowledged that it had overruled its decision, before the trial began, to apply Indiana law to the case. At the post-trial motion hearing, the court stated:

"I reversed myself in this case. I was going to apply Indiana law, as you well know *** I found Indiana law to be diametrically opposed to Illinois, that I don't think I could have [*sic*] gave either party a fair trial, neither do I think any other Illinois judge could have if he used [*sic*] Illinois law in this case. Now again in the *discretion* of the Court, I found Illinois law to be more logical, fair, updated, in conformity with the larger states in the union, and that's why the Court again in its discretion reversed itself and applied Illinois law." (Emphasis added.)

Defendant's motions for directed verdict, for judgment notwithstanding the verdict, for remittitur, and for a new trial were denied.

## I. CHOICE OF LAW

Defendant first argues that the trial court erred in applying Illinois substantive law because the accident occurred in Indiana. The trial court therefore erred in refusing to give Indiana preliminary jury instructions, in barring defendant's Indiana affirmative defenses, in rejecting all substantive Indiana pattern instructions, and in preventing defendant from arguing either the Indiana incurred risk or the assumption of risk doctrine at the close of the evidence.

■ The parties do not disagree that the substantive law of Indi-

ana applied to this case. In conflict of laws cases, matters of procedure are governed by the law of the forum (*Millsap v. Central Wisconsin Motor Transport Co.* (1963), 41 Ill. App. 2d 1, 15, 189 N.E.2d 793), while the law of the State with the most significant contacts controls substantive matters (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 48, 262 N.E.2d 593). In this case, matters of procedure were to be governed by Illinois law while matters of substance were to be controlled by Indiana law. Also, for the purpose of applying these rules, the law of the forum is to be employed to determine whether a matter is substantive or procedural. (*Millsap*, 41 Ill. App. 2d at 15-16.) The Indiana preliminary instructions related primarily to the procedures of the trial. Even when an Illinois court applies the substantive law of another State, Illinois procedure still governs the trial. (See Restatement (Second) of Conflict of Laws § 122 (1971) (a court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another State to resolve other issues in the case).) Therefore, the Indiana preliminary instructions are not to be applied in a new trial.

## II. *RES IPSA LOQUITUR*

Defendant next argues that the trial court erred in instructing the jury on the doctrine of *res ipsa loquitur* and that plaintiff failed to raise the issue of *res ipsa loquitur* in his complaint. We will address the latter issue and the issue of whether Illinois or Indiana law of *res ipsa loquitur* applied because they will likely become issues again on remand.

In conflict of laws situations, the procedural law of the forum State is applied and the substantive law of the other State is applied. (*Cox v. Kaufman* (1991), 212 Ill. App. 3d 1056, 1062, 571 N.E.2d 1011.) The Restatement (Second) of Conflict of Laws provides rules for determining whether the doctrine of *res ipsa loquitur* of the forum State or of the other State is to be applied. (Restatement (Second) of Conflict of Laws §§ 134 through 135 (1971).) When a State's *res ipsa loquitur* doctrine is only an application of the rules of circumstantial evidence, the local law of the forum will be applied to determine the circumstances under which the doctrine may be invoked. (Restatement (Second) of Conflict of Laws § 135 (1971).) The law of the other State will be applied if "the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial." (Restatement (Second) of Conflict of Laws § 134 (1971).) The rationale is that some rules involving the burden of going forward with the evidence have the effect that is closely akin to a rule of substantive law. Restatement (Second) of Conflict of Laws § 134, Comment *b*, at 371 (1971).

In the case of *Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 435, 454 N.E.2d 754, the court stated that in Illinois a "forum will apply its own local law in determining which party has the burden of persuading the trier of fact on a particular issue unless the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial." At the time the *Mudd* case was decided, the Indiana rule placed the burden of proving contributory negligence upon the defendant. (*Mudd*, 118 Ill. App. 3d at 435.) In Illinois, the rule was that the burden was on the plaintiff to prove freedom from contributory negligence. (*Mudd*, 118 Ill. App. 3d at 435.) The court held that the Indiana rule regarding proof of contributory negligence was procedural and therefore the trial court's instruction according to Illinois law was proper. *Mudd*, 118 Ill. App. 3d at 435-37.

■ We find that Indiana's *res ipsa loquitur* doctrine is a rule of evidence (*Bituminous Fire & Marine Insurance Co. v. Culligan Fyrprotexion, Inc.* (Ind. App. 1982), 437 N.E.2d 1360, 1365), has no substantive effect and merely regulates the conduct of the trial, and therefore the Illinois doctrine should be applied to this case on remand if the court should determine that there is sufficient evidence. Under the *res ipsa loquitur* doctrine, an inference of negligence can be drawn where plaintiff presents sufficient evidence that the injuring instrumentality was under the exclusive management and control of the defendant or his servants and the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care. (*Bituminous*, 437 N.E.2d at 1365.) Under Indiana law, after plaintiff has presented sufficient evidence to bring herself within the operation of the doctrine, defendant then has the burden of going forward with evidence to explain the accident although the burden of proof does not shift. (*Bituminous*, 437 N.E.2d at 1365.) The premise of the *res ipsa loquitur* doctrine is that when defendant is in control, reason permits the inference that it must have been defendant who was negligent because fault reasonably cannot be traced to any other person. (*Bituminous*, 437 N.E.2d at 1367.) The Indiana doctrine merely regulates the conduct of the trial because the burden of proof remains on plaintiff to prove defendant was negligent. The primary purpose of the Indiana doctrine is not to affect the decision of the issue of negligence, and therefore Illinois law should apply.

■ As the doctrine of *res ipsa loquitur* is a rule of evidence and not a cause of action, plaintiff did not have to plead it in his complaint. The requirements of pleading are procedural, and therefore Illinois law should apply. (See Restatement (Second) of Conflict of

Laws § 127 (1971) (the local law of the forum governs rules of pleading).) Illinois cases do not require the pleading of the doctrine, but they do require that the complaint allege the general negligence of defendant. (*Darrough v. Glendale Heights Community Hospital* (1992), 234 Ill. App. 3d 1055, 1059-60, 600 N.E.2d 1248.) Section 2—603(b) of the Code of Civil Procedure requires that each separate cause of action upon which a separate recovery might be had shall be stated in a separate count. (735 ILCS 5/2—603(b) (West 1992).) Plaintiff's first amended complaint did allege general negligence ("failed to provide plaintiff with a safe place within which to work") in addition to specific negligence, and therefore plaintiff was able to raise the applicability of the *res ipsa loquitur* doctrine.

As the cause is being reversed and remanded, we do not reach the issue whether a *res ipsa loquitur* instruction was properly given based on the evidence at trial.

### III. BARRING OF AFFIRMATIVE DEFENSES

In this case, on the eve of trial, defendant's affirmative defenses of incurred risk and assumption of risk were dismissed by the trial court on motion of plaintiff. On February 22, 1993, the trial court ruled that Indiana law would be applied. On that same day, defendant filed affirmative defenses that are permitted under Indiana law. On that same date, plaintiff's motion to dismiss defendant's affirmative defenses was granted by the trial court. No reason for dismissing the affirmative defenses was given.

On the basis of timeliness, defendant filed its amendment on the same day the court declared that Indiana law would be followed. There is no assertion by any of the parties that the court had made a decision to apply Indiana law before that date. Therefore, it cannot be found that the affirmative defenses were not timely filed.

■ The order dismissing the affirmative defenses was made shortly before the trial commenced. The court did not have the benefit of hearing the evidence introduced during the trial before dismissing the defenses. At the close of the case, during the jury instruction conference, defendant tendered Indiana pattern jury instructions on incurred risk and assumption of risk. (See Indiana Pattern Jury Instructions, Civil, Nos. 5.43, 5.45 (2d ed. Supp. 1994) (current versions of instructions).) The court refused to give the instructions to the jury. The court gave as a reason the fact that the court had made a ruling dismissing the affirmative defenses before the trial commenced. The court did not consider the trial evidence.

We find that it was error for the trial court to dismiss defendant's affirmative defenses before trial and not to consider the evidence in

the case in deciding whether to give Indiana instructions covering incurred risk and assumption of risk.

## IV. BARRING OF DEFENSE WITNESSES

■ Defendant argues that the trial court erred when it barred several defense witnesses from testifying because their testimony was irrelevant and immaterial. Defendant first argues that it was prejudiced by the granting of plaintiff's motion *in limine* to bar Walter Siggins, Richard Siggins, Ed Boersma, Kathleen Boersma, and Dennis Bartolomei from testifying because defendant contends that they had knowledge about plaintiff's physical ability to work after the accident.

The following is a summary of the relevant barred testimony. Richard Siggins saw plaintiff lift heavy items, cut a large section of a wall, install glass sheeting, put up portions of a dropped ceiling while using a ladder, paint walls, lay tile, and repair shelves. Walter Siggins saw plaintiff perform numerous construction activities. Plaintiff never indicated to Walter Siggins any physical inability to perform any of the work that he was requested to do. Ed Boersma saw plaintiff do home remodelling at plaintiff's homes in Illinois, including painting, floor finishing, wallpapering, basement remodelling, and installing walls, lighting, a deck, and carpeting. Ed Boersma also would have testified that plaintiff had a better than average ability to withstand pain. Dennis Bartolomei would have testified that plaintiff did drywall installation and carpentry work at his hair salon. Kathleen Boersma, plaintiff's former wife, would have testified that plaintiff was capable of working six to seven hours a day three to four days a week.

The admission of evidence rests largely within the sound discretion of the trial court, and its decision will be reversed only when such discretion has been clearly abused. (*Pyskaty v. Oyama* (1994), 266 Ill. App. 3d 801, 808, 641 N.E.2d 552.) The court has considerable power to exclude evidence that is merely cumulative, including limiting the number of witnesses each party may call. *In re Marriage of Wycoff* (1994), 266 Ill. App. 3d 408, 417, 639 N.E.2d 897.

The above-summarized testimony would have contradicted plaintiff's testimony that his physical abilities were severely limited after the accident. The inability of defendant to present this evidence was prejudicial because it was relevant to the issue of damages and credibility. Other than Dr. Matz, no other witness testified for defendant regarding plaintiff's physical abilities.

Defendant next argues that other testimony of Ed Boersma contradicted plaintiff and should not have been barred. Ed Boersma

would have testified that the sight of escaping steam would indicate the possibility of a leak and Ed Boersma would not have walked through it. We find that this testimony was relevant to defendant's claim of contributory negligence and incurred risk.

The asserted points of all these witnesses either would have contradicted plaintiff's testimony, would have provided evidence for defendant's defense, or would have provided evidence of the extent of plaintiff's damages. The testimony was not irrelevant.

## V. EXCLUSION OF DEFENSE EVIDENCE

■ Defendant next argues that the trial court erred in restricting the anticipated expert testimony of Ken Panozzo because defendant contends that he was not an expert within Supreme Court Rule 220 (134 Ill. 2d R. 220) who needed to be disclosed. There was no offer of proof of the opinion. Defendant claims that the opinion was about the cause and the timing of the accident.

Supreme Court Rule 220 requires disclosure of an expert retained to render an opinion. Some cases have considered the intimate involvement by the employee in the matter being litigated as a factor in deciding whether an employee was an expert who should be disclosed. See, e.g., *Taake v. WHGK, Inc.* (1992), 228 Ill. App. 3d 692, 705, 592 N.E.2d 1159.

Ken Panozzo was an engineer employed by defendant who had knowledge of symptoms of a leaking steam line. It is alleged he had knowledge regarding refinery operations and maintenance practices. We do not know if he had knowledge regarding this particular accident site.

The trial court did not have knowledge of the substance of Panozzo's expert opinion or sufficient facts from which it could determine whether Panozzo should have been disclosed as an expert. Before the trial court ruled on the objection, defendant should have been allowed to show that Panozzo's expert opinion was not subject to disclosure. In a new trial, defendant should do so.

■ Defendant next argues that the investigator, Peter Dignan, should have been able to testify about his observations of and his conversations with plaintiff.

The following is a summary of the barred testimony. Plaintiff's gait was more labored when Dignan observed him in Chicago in May than it was when he observed him near plaintiff's Wisconsin home earlier that month. There were severe weather conditions when Dignan filmed plaintiff preparing for a ride in his boat. Before Dignan started filming he observed plaintiff walking back and forth to the boat carrying items.

We find that it would have been helpful to the jury if the investigator explained the weather conditions in the boat scenes when the videotape was taken because they are not clear from the videotape alone. An investigator's objective observations of a personal injury plaintiff are admissible when relevant to the issue of the extent and permanency of plaintiff's injury. (*Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, 267, 554 N.E.2d 266.) Testimony of plaintiff's activity before the videotape was begun may have been relevant to the issue of plaintiff's injuries. However, we do not find an abuse of discretion when the court barred this testimony.

■ It was not error to prohibit the replaying of the videotape during closing argument, as defendant also argues, because of the danger of overemphasizing this evidence (see *People v. Ammons* (1993), 251 Ill. App. 3d 345, 347, 622 N.E.2d 58 (replay of audiotape of defendant's statement was improper)), but the trial court and the parties should have considered replay of excerpts (*People v. Gross* (1994), 265 Ill. App. 3d 74, 77, 637 N.E.2d 789). However, this should be left to the discretion of the trial court.

## VI. ADMISSION OF EVIDENCE

■ Defendant next argues that the trial court erred in overruling defendant's objections to the attempted impeachment of Dr. Matz as having a reputation of being a defense expert and concerning the 56 times he testified for a particular law firm according to his signed answers to interrogatories. Plaintiff never introduced his answers to interrogatories to prove the attempted impeachment.

Plaintiff does not argue that he properly followed up by introducing impeaching evidence such as Dr. Matz's signed answers to interrogatories. Incomplete impeachment creates highly prejudicial innuendo and reversible error. (*Garcia v. City of Chicago* (1992), 229 Ill. App. 3d 315, 320, 593 N.E.2d 855.) Dr. Matz testified that plaintiff's conditions were preexisting, while plaintiff's treating surgeon testified that there was no evidence of a preexisting spine problem. Therefore it was prejudicial to defendant because the jury may have discounted the opinion of defendant's expert based on an unsubstantiated implication that the expert was a professional expert for defendant. The objections should have been sustained, the questions and answers stricken, and the jury instructed to disregard the testimony, or other appropriate measures could have been taken.

■ Defendant next argues that a statement of Dr. Chuman that plaintiff was a credible historian should not have been admitted. We agree that it would have been irrelevant character evidence. (See *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473, 473 N.E.2d 1322 (generally

character evidence is inadmissible when a party's character is not in issue).) However, it was properly admitted in this case because plaintiff's answers were used by the doctor in treating him.

■ Defendant next argues that the trial court erred in admitting evidence of subsequent steam leaks unrelated to plaintiff's accident. Plaintiff argues that defendant "opened the door" to the evidence by asking Williamson whether the photographs of the accident site demonstrated a catastrophic leak. Williamson answered no. However, we find from the record that the plaintiff was the first one to elicit mention of a catastrophic leak when he questioned Williamson about large leaks. We find that defendant did not open the door to evidence of other steam leaks. Plaintiff could have questioned Williamson as to why he felt the leak was not catastrophic without eliciting evidence of subsequent steam leaks.

Plaintiff has not argued how the evidence of subsequent steam leaks was relevant. Evidence of either prior or subsequent accidents is admissible if the equipment involved was in substantially the same condition and if the accidents were sufficiently similar. (*Gowler v. Ferrell-Ross Co.* (1990), 206 Ill. App. 3d 194, 202, 563 N.E.2d 773.) The subsequent steam leaks could only be relevant if they make it more probable than not that defendant negligently operated the refinery at this site on that date in such a way that caused injury to plaintiff. (See *People v. Boughton* (1994), 268 Ill. App. 3d 170, 172, 644 N.E.2d 471 (definition of relevant evidence).) Plaintiff did not prove that the conditions under which defendant operated the refinery were substantially the same at the time of the subsequent accidents as they were at the time of plaintiff's accident. The evidence of the subsequent steam line leaks was irrelevant and was prejudicial to defendant because the jury may have determined defendant's liability based on unconnected occurrences.

Defendant is entitled to a new trial based on the prejudice to it of the errors in excluding and in admitting the evidence discussed above.

We do not reach the issues of the denial to declare a mistrial and of the refusal to order a remittitur because the cause is being reversed and remanded.

On remand in a new trial, the trial court should give Indiana instructions on substantive matters, and defendant should be permitted to raise Indiana law affirmative defenses.

The judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

RIZZI and TULLY, JJ., concur.