706 N.E.2d 1065 (1999)
MORRIS B. CHAPMAN & ASSOCIATES, LTD., Plaintiff-Appellant and Cross-Appellee,
v.
John KITZMAN and Edna Kitzman, Defendants-Appellees and Cross-Appellants.
No. 5-97-1005.
Appellate Court of Illinois, Fifth District.
February 2, 1999.
*1068 Morris B. Chapman, Clarence W. Harrison II, Morris B. Chapman & Associates, Ltd., Granite City, for Appellant.
William J. Knapp, Robert J. Evola, Burroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, for Appellee.
Justice KUEHN delivered the opinion of the court:
John W. Kitzman III died in an industrial accident. His wife, Karen, hired Morris B. Chapman & Associates, Ltd. (Chapman), to *1069 pursue a wrongful death action. Karen agreed to pay Chapman one-third of any recovery. Chapman recovered $800,000 but was only paid $227,040. This action ensued.
The lawsuit filed on behalf of Karen Kitzman in Missouri named Karen Kitzman and decedent's parents, John and Edna Kitzman, as his heirs. Chapman obtained an $800,000 settlement for the benefit of those heirs, prepared a petition for settlement approval, and noticed a hearing.
A few days prior to the Missouri trial court's hearing on the petition, John and Edna Kitzman retained separate counsel, attorney John A. Kilo. They agreed to pay Kilo one-third of their recovery in excess of $100,-000. John and Edna Kitzman intervened and participated in the settlement approval and apportionment hearing.
After the apportionment hearing, the Missouri trial court entered an order distributing 86% of the settlement ($688,000) to Karen Kitzman and 7% ($56,000) each to John and Edna Kitzman. It further ordered that Chapman's fee would consist of one-third of Karen Kitzman's share ($227,040) only, while Kilo would receive one-third of John and Edna Kitzman's share over $100,000 ($4,000). The Missouri trial court based its fee apportionment on section 537.095(4)(2) of the Missouri Revised Statutes, which requires a trial court to order the claimant:
"To deduct and pay the expenses of recovery and collection of the judgment and the attorneys' fees as contracted, or if there is no contract, or if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment or settlement, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances." Mo.Rev.Stat § 537.095.4(2) (1986).
The Missouri trial court stated that this provision required it to apportion attorney fees according to the existing contingency contracts for the following reason: "Once separate counsel appear for competing claimants, the statutory language directing payment of attorney's fees `as contracted' must be given full effect."
Chapman filed the instant action in Madison County Circuit Court, seeking additional attorney fees from defendants, John and Edna Kitzman. Chapman's complaint originally consisted of a single quantum meruit count but was later amended to include a second count based upon the common-fund doctrine. The circuit court disposed of the action in an order that:
 granted Chapman's oral motion to dismiss count I.
 granted defendants' motion to dismiss count II of Chapman's complaint grounded on the common-fund doctrine's inapplicability to this case.
 denied defendants' summary judgment motion based upon the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1).
 denied defendants' motion for sanctions seeking attorney fees pursuant to Supreme Court Rule 137 (155 Ill.2d R. 137).
 denied Chapman's summary judgment motion, including Chapman's argument that a judge, rather than a jury, must determine the proper fee award.
On appeal, Chapman attacks the circuit court's dismissal of count II and its denial of summary judgment on the question of how a common-fund-doctrine fee award is determined. Defendants cross-appeal the circuit court's denial of their summary judgment motion and motion for sanctions.
We first address defendants' argument that the circuit court erred in denying their summary judgment motion. Specifically, defendants contend that the full faith and credit clause of the United States Constitution bars this action because the Missouri trial court's fee-apportionment order is res judicata as to Chapman's claim. This contention presents a disputed question of law that we review de novo. Statler v. Catalano, 293 Ill.App.3d 483, 485-86, 229 Ill.Dec. 274, 691 N.E.2d 384, 386 (1997).
"The full faith and credit clause of the United States Constitution [citation] generally *1070 requires every State to give a foreign judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." Pfaff v. Chrysler Corp., 208 Ill.App.3d 910, 922, 153 Ill.Dec. 337, 567 N.E.2d 52, 60 (1991), aff'd, 155 Ill.2d 35, 182 Ill.Dec. 627, 610 N.E.2d 51 (1992). Therefore, we must apply Missouri law in determining whether the Missouri trial court's order is res judicata as to the claim before us.
In Missouri, the res judicata doctrine bars a claim only if the following elements are satisfied: (1) the identity of the thing sued for, (2) the identity of the cause of action, (3) the identity of the parties to the action, and (4) the identity of the quality of the person for or against whom the claim is made. State of Missouri ex rel. Sanders v. Martin, 945 S.W.2d 641, 642 (1997). Our res judicata analysis need not go beyond the third element. Facing an attorney-fees dispute arising from a wrongful death action, the Missouri appellate court explained that attorneys seeking fees are not parties to a suit:
"The problem with the trial court's ruling is that the attorneys were not parties to the underlying litigation. Res judicata bars only claims by parties and privies. Attorneys claiming a portion of a party's fee have not previously been held to be in privity with their clients. The concept of privity for purposes of res judicata connotes interests so closely related that the party sought to be barred may be said to have had a day in court. The interest of an attorney with regard to a fee claim is not of this character." Floyd v. Shaw, 830 S.W.2d 564, 565 (Mo.App.1992).
Consequently, the case before us lacks an identity of parties with the underlying Missouri wrongful death action.
Defendants nevertheless claim that, though technically a nonparty in the underlying litigation, Chapman was an "actual interested party" with respect to the attorneyfees issue. Chapman was the petitioner for fees and had an opportunity to be heard. Thus, defendants argue, Chapman could have assailed the fee apportionment in the Missouri appellate court but may not attack it in an independent Illinois action. This contention is unsupported.
Missouri law does not allow a law firm to independently appeal the amount of an attorney-fees award:
"The right to appeal is purely statutory. [Citations.] Section 512.020 provides that any `party to a suit aggrieved by any judgment of any trial court in any civil case ... may take his appeal to a court having appellate jurisdiction.' By its express terms, the statute limits appeals; only a `party to a suit' may appeal. The firm was not a party. Therefore, the firm has no statutory right to appeal." Oberhellmann v. Oberhellmann, 950 S.W.2d 487, 488 (1997).
Similarly, appellate review of a wrongful death settlement distribution order must be sought pursuant to section 512.020 of the Missouri Code of Civil Procedure (Mo.Rev. Stat. § 512.020 (1986)). Although Chapman addressed the attorney-fees issue while representing Karen Kitzman in the settlement distribution hearing, it still had no statutory right to appeal the fee apportionment because it was not a party to the suit. Indeed, the only persons with standing to appeal were Karen Kitzman and defendants, none of whom were aggrieved by the fee apportionment. The simple fact remains that, without an identity of parties, we cannot give full faith and credit to the Missouri trial court's fee-apportionment order. Therefore, we affirm the circuit court's denial of defendants' summary judgment motion.
Observing that defendants' sanctions motion was predominantly based upon this same argument, we likewise affirm the circuit court's denial of that motion. "The purpose of Rule 137 is to penalize litigants who plead frivolous or false matters or bring suit without any basis in the law." Fischer v. Brombolich, 246 Ill.App.3d 660, 664, 186 Ill. Dec. 553, 616 N.E.2d 743, 745 (1993). The allowance of fees and expenses under this rule is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. Fischer, 246 Ill.App.3d at 664, 186 Ill.Dec. 553, 616 N.E.2d at 745-46. "A trial court exceeds its discretion only *1071 where no reasonable person would take the view adopted by it." Fischer, 246 Ill.App.3d at 664, 186 Ill.Dec. 553, 616 N.E.2d at 746. On the record before us, we conclude that a reasonable decision-maker could deny defendants' motion for sanctions.
We now turn to the merits of Chapman's appeal. Chapman contends that the circuit court erred in granting defendants' motion to dismiss count II of its complaint. Defendants' motion raised a conflict-of-laws issue, claiming that Missouri law should be applied because "[t]he situs of the incident which is the basis of this suit occurred in the state of Missouri * * *." Specifically, defendants argued that count II failed to state a cause of action under Missouri substantive law, as section 537.095 renders the common-fund doctrine inapplicable to attorney-fees claims in wrongful death cases. Alternatively, defendants urged that, even if Illinois substantive law applied, count II still failed to state a cause of action because the common-fund doctrine's limited application would not extend to these facts.
Before we examine count II's sufficiency under Illinois procedural law (Velle Transcendental Research Ass'n v. Esquire, Inc., 41 Ill.App.3d 799, 803, 354 N.E.2d 622, 626 (1976)), we must first determine which jurisdiction's substantive law controls this case. We note that the circuit court's order does not expressly state what law governs this issue. However, this omission is inconsequential because we need not defer to a circuit court's choice-of-law decision; rather, our review of this question of law is de novo. Malatesta v. Mitsubishi Aircraft International, Inc., 275 Ill.App.3d 370, 384, 211 Ill. Dec. 710, 655 N.E.2d 1093,1102 (1995).
Here, we need not engage in a conflicts analysis, as neither Missouri nor Illinois law permits the application of the common-fund doctrine to this case. "Conflicts rules are applied only when a difference in law will make a difference in the outcome." Kramer v. Weedhopper of Utah, Inc., 204 Ill.App.3d 469, 474, 149 Ill.Dec. 807, 562 N.E.2d 271, 274 (1990). Under Missouri law, section 537.095.4(2) renders the commonfund doctrine inapplicable to a Missouri wrongful death action where attorney-client contracts exist. Keene v. Wilson Refuse, Inc., 788 S.W.2d 324, 327 (Mo.App.1990). Further, outside of the subrogation context, an Illinois court lacks authority to award attorney fees under the common-fund doctrine if no segregated, specific fund is brought under its control. City of Chicago v. Korshak, 276 Ill.App.3d 597, 602, 213 Ill.Dec. 144, 658 N.E.2d 1165, 1169 (1995); Wolff v. Ampacet Corp., 284 Ill.App.3d 824, 828-29, 220 Ill.Dec. 601, 673 N.E.2d 745, 748 (1996). Without such a fund under its control, the circuit court could not apply the doctrine under Illinois law.
We now confront count II's sufficiency in light of the identical effect of Illinois and Missouri substantive law on this case. Under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)), a complaint is subject to dismissal if it fails to state a cause of action because of factual or legal insufficiency. Cummings v. City of Waterloo, 289 Ill.App.3d 474, 479, 225 Ill.Dec. 559, 683 N.E.2d 1222, 1225 (1997). "If a complaint fails to set forth a legally recognized claim upon which the plaintiff can recover, the complaint is infirm beeause of a legal insufficiency, while a factually insufficient complaint fails to allege sufficient facts essential to the cause of action." Cummings, 289 Ill.App.3d at 479, 225 Ill.Dec. 559, 683 N.E.2d at 1225. In addressing a dismissal motion under this section, the trial court must accept as true all well-pleaded facts in the complaint and all reasonable inferences drawn from these facts. Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 8-9, 180 Ill.Dec. 307, 607 N.E.2d 201, 205 (1992). Furthermore, the court should interpret all pleadings and supporting documents in the light most favorable to the plaintiff. Kaden v. Kagann, 260 Ill.App.3d 256, 258, 200 Ill. Dec. 176, 635 N.E.2d 515, 517 (1994). It should not dismiss the complaint for a failure to state a cause of action "unless it clearly appears that no set of facts could be proven under the pleadings which would entitle the plaintiff to relief." Davis v. Temple, 284 Ill.App.3d 983, 989, 220 Ill.Dec. 593, 673 N.E.2d 737, 741 (1996). On appeal, our review of the trial court's ruling on a motion to dismiss is de novo. Cummings, 289 Ill. *1072 App.3d at 479, 225 Ill.Dec. 559, 683 N.E.2d at 1225.
The absence of a segregated fund under the circuit court's control does not mean that count II failed to state a cause of action. Our supreme court has explained the substance-over-form approach of Illinois courts in addressing a dismissal motion under section 2-615:
"A motion to dismiss does not lie as long as a good cause of action is stated even if that cause of action is not the one intended to be asserted by the plaintiff. [Citations.] A complaint need only allege facts which establish the right to recovery; not only are allegations of law or conclusions not required, they are improper. It is, moreover, the allegations of a complaint which define a cause of action, not the name or. title that may be used by plaintiff." Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 488-89, 203 Ill.Dec. 463, 639 N.E.2d 1282, 1291 (1994).
Indeed, this approach is consistent with section 2-603(c) of the Code of Civil Procedure, which provides that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILCS 5/2-603(c) (West 1996).
Liberally construing the allegations contained in count II, we believe that a viable cause of action was alleged. Count I of Chapman's amended complaint, which it voluntarily dismissed, is entitled "QUANTUM MERUIT," while count II bears a "FUND DOCTRINE" label. However, the counts contain virtually the same factual allegations and identical prayers for relief. Label aside, we believe that count II, just as count I, sounds in the legal theory of quantum meruit.
Initially, we determine whether Missouri or Illinois substantive law controls this examination. Here, we do see a difference in law warranting a difference in the outcome. See Kramer, 204 Ill.App.3d at 474, 149 Ill.Dec. 807, 562 N.E.2d at 274. In Missouri, section 537.095.4(2) would bar this action because it prescribes that attorney fees arising from a Missouri wrongful death action can only be apportioned pursuant to attorney-client contracts. Keene, 788 S.W.2d at 327. Conversely, Illinois courts recognize the theory of quantum meruit as a legal remedy for attorney fees. Kannewurf v. Johns, 260 Ill.App.3d 66, 71, 198 Ill.Dec. 381, 632 N.E.2d 711, 714-15 (1994). Thus, we must determine which law applies based upon the conflicts law of Illinois, the forum State. Esser v. Mclntyre, 169 Ill.2d 292, 298, 214 Ill.Dec. 693, 661 N.E.2d 1138, 1141 (1996).
In conflict-of-laws cases, Illinois applies the most-significant-contacts rule embodied in the American Law Institute's second Restatement. Restatement (Second) of Conflict of Laws (1971); Esser, 169 Ill.2d at 297-98, 214 Ill.Dec. 693, 661 N.E.2d at 1141. Under this approach, the law of the State with the most significant contacts controls substantive matters. Boersma v. Amoco Oil Co., 276 Ill.App.3d 638, 645, 213 Ill.Dec. 152, 658 N.E.2d 1173, 1180 (1995). We note that both Illinois and Missouri generally view the theory of quantum meruit as based upon a contract implied at law. See Paradise v. Augustana Hospital & Health Care Center, 222 Ill.App.3d 672, 677, 165 Ill.Dec. 147, 584 N.E.2d 326, 329 (1991); Johnson Group, Inc. v. Grasso Bros., Inc., 939 S.W.2d 28, 30 (1997). A contract implied at law, or quasicontract, is not a contract at all; rather, it is a rule of law requiring the restitution of something belonging to the plaintiff in some sense that came into the defendant's hands. Barry Mogul & Associates, Inc. v. Terrestris Development Co., 267 Ill.App.3d 742, 750, 205 Ill.Dec. 294, 643 N.E.2d 245, 251 (1994). Therefore, our conflict-of-laws analysis is governed by section 221 of the Restatement (Second) of Conflict of Laws pertaining to restitution, as it "applies to claims, which are based neither on contract nor on tort, to recover for unjust enrichment." Restatement (Second) of Conflict of Laws § 221, Comment a, at 728 (1971).
Section 221 requires that the applicable law is the law of the State that has "the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 221 (1971). Section 6 of the Restatement (Second) of Conflict of Laws *1073 provides that when two or more jurisdictions have an interest in applying their law to a case, the following factors are relevant in choosing which rule of law to apply:
"(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of the interested states and the relative interests of those states in the determinations of the particular issue,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability[,] and uniformity of result, and
(g) ease in determination of the law to be applied." Restatement (Second) of Conflict of Laws § 6, at 10 (1971).
Section 221 lists several important contacts which the forum will consider in applying the principles of section 6 to determine the law applicable to an issue:
"(a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
(b) the place where the benefit or enrichment was received,
(c) the place where the act conferring the benefit or enrichment was done,
* * *
(e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment." Restatement (Second) of Conflict of Laws § 221(2), at 727 (1971).
Moreover, we employ an "interest analysis" approach in determining each factor's degree of significance for choice-of-law purposes:
"This approach is based on the conclusion that `[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.' [Citations.] Instead of a mere counting of contacts, what is therefore required is a `consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.'" Mitchell v. United Asbestos Corp., 100 Ill. App.3d 485, 492-93, 55 Ill.Dec. 375, 426 N.E.2d 350, 355 (1981).
Guided by our decision in Mitchell, we construe sections 6 and 221 together as giving rise to a three-step process for our conflict-of-laws analysis in this case: (1) isolate the issue and define the conflict, (2) identify the policies embraced in the conflicting laws, and (3) examine the contacts of the respective jurisdictions in order to determine which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied. Mitchell, 100 Ill.App.3d at 494, 55 Ill.Dec. 375, 426 N.E.2d at 356-57; see also Estate of Barnes, 133 Ill.App.3d 361, 367, 88 Ill.Dec. 438, 478 N.E.2d 1046, 1051 (1985); Jones v. State Farm Mutual Automobile Insurance Co., 289 Ill.App.3d 903, 918, 224 Ill.Dec. 677, 682 N.E.2d 238, 249 (1997).
We have already isolated the issue and defined the conflict: Illinois law permits a quantum meruit action for attorney fees under the facts here, while Missouri law does not. Next, we must identify the policies inherent in these conflicting laws. Illinois's policy behind the quantum meruit theory is the prevention of unjust enrichment. Rodes v. Preston Corp., 61 Ill. App.3d 599, 611, 18 Ill.Dec. 554, 377 N.E.2d 1190, 1198 (1978). Meanwhile, Missouri's policy in prohibiting that theory in this case is apparently to enforce the legislative intent of section 537.095. See Keene, 788 S.W.2d at 327.
Finally, we must examine the relevant contacts of the respective jurisdictions. We believe that the relationship between Chapman and defendants was centered in Illinois because any and all communication between these Illinois residents seemingly occurred in Illinois. Furthermore, Chapman's acts conferring the benefit or enrichment and defendants receipt thereof occurred in both Illinois and Missouri, as Chapman pursued the case in a Missouri court but likely labored on the case to a large extent at its Illinois office. Most importantly, this case is brought by an Illinois corporation against Illinois-resident *1074 defendants domiciled in this State. Weighing these contacts, we conclude that Illinois has a superior connection with the occurrence and thus would, have a superior interest in having its policy or law applied.
Indeed, our decision is consistent with the modern approach to choice-of-law questions, which places the greatest importance on the forum's public policy. Maker & Associates, Inc. v. Quality Cabinets, 267 Ill. App.3d 69, 77, 203 Ill.Dec. 850, 640 N.E.2d 1000, 1006 (1994). A State's public policy must be sought in its constitution, legislative enactments, and judicial decisions. Roanoke Agency, Inc. v. Edgar, 101 Ill.2d 315, 327, 78 Ill.Dec. 258, 461 N.E.2d 1365, 1371 (1984). Illinois's public policy against unjust enrichment (see generally In re Estate of Moses, 13 Ill.App.3d 137, 148, 300 N.E.2d 473, 480 (1973)) bolsters our decision to apply Illinois law in this case.
The alternative of applying Missouri law contravenes this public policy by fostering inequitable fee apportionments. While the Missouri legislature likely intended section 537.095.4(2) to produce equitable fee apportionments, we are troubled by its practical effect. Under this section, an attorney who creates a recovery may be subject to an inequitable attorney-fees apportionment from which that attorney cannot appeal. It affords a trial court the discretion to award the original plaintiffs attorney a fair and equitable fee from a claimant with whom that attorney has no written contract. However, according to the Missouri trial court, that discretion is eliminated if that claimant retains separate counsel any time before final judgment or settlement approval because the court must then apportion attorney fees "as contracted".
The Missouri appellate court has taken notice of the circumstances which create this inherent inequity:
"There is a point at which the interests of several claimants for damages for the same wrongful death diverge. Until there is a recovery by settlement or judgment, their interests are the same. All want the largest recovery possible. * * * When the money is in hand, the respective claimants become adversaries in the carving of the pie, and all are entitled to the encumbered services of their individual counsel." Floyd, 830 S.W.2d at 566.
In other words, conflicting interests of multiple claimants at the distribution stage often necessitate the retention of individual counsel after recovery. Under Missouri law, that retention of separate counsel by a claimant with whom the original plaintiffs attorney has no written contract will relieve that claimant of any duty to pay for that attorney's services, despite the fact that the claimant impliedly accepted the attorney's representation of his or her interests in a wrongful death action with full knowledge that those nongratuitous services would lead to recovery.
The facts alleged in Chapman's complaint exemplify this injustice. Chapman alone handled this case for over three years and negotiated the settlement for the benefit of all beneficiaries, including defendants. Chapman alone represented defendants' interests in reaching the settlement agreement, garnering $800,000 for the benefit of Karen Kitzman and defendants. Defendants impliedly accepted this representation with knowledge that Chapman's nongratuitous services would lead to a recovery. Yet, the Missouri trial court's reading of section 537.095.4(2) required defendants to pay Chapman nothing because, after Chapman procured settlement funds, they entered into a written contract with a separate attorney to represent them in the distribution stage. Simply put, section 537.095.4(2) promotes unjust enrichment. Clearly, Illinois's policy of preventing unjust enrichment can only be furthered by the application of Illinois law, while the application of Missouri law would serve no worthwhile policy.
We now address the sufficiency of count II on a quantum meruit theory under Illinois substantive law. "The term quantum meruit means literally `as much as he deserves' and is an expression that describes the extent of liability on a contract implied in law (also called a `quasi-contract'); it is predicated on the reasonable value of the services performed." Barry Mogul & Associates, Inc., 267 Ill.App.3d at 749, 205 Ill.Dec. *1075 294, 643 N.E.2d at 251. "Recovery is founded on the implied promise of the recipient of services or materials to pay for something which he has received that is of value to him." Century 21 Castles By King, Ltd. v. First National Bank of Western Springs, 170 Ill.App.3d 544, 548, 121 Ill.Dec. 174, 524 N.E.2d 1222,1226 (1988). A quantum meruit theory applies where the defendant has received a benefit which would be unjust for him to retain without paying for it. Barry Mogul & Associates, Inc., 267 Ill.App.3d at 749-50, 205 Ill.Dec. 294, 643 N.E.2d at 251. Therefore, we must examine count II for facts supporting the following elements: (1) plaintiff performed a service that benefitted defendants, (2) defendants accepted the benefit, and (3) the circumstances indicate that the plaintiffs service was not intended to be gratuitous. Village of Clarendon Hills v. Mulder, 278 Ill.App.3d 727, 735, 215 Ill.Dec. 424, 663 N.E.2d 435, 441-42 (1996).
Count II consists of several factual averments on its face and incorporates a copy of the Missouri trial court's apportionment order as an exhibit. We note that "exhibits attached to the complaint become part of the pleadings, and facts stated in such exhibits are considered the same as having been alleged in the complaint." St. Francis Medical Center v. Vernon, 217 Ill.App.3d 287, 289, 160 Ill.Dec. 276, 576 N.E.2d 1230, 1231 (1991). Thus, our probe of count II's sufficiency includes both the facts alleged on its face and those contained in the apportionment order.
Accepting as true all well-pleaded facts and all reasonable inferences drawn therefrom, we believe that count II sufficiently states a cause of action for quantum meruit based upon a contract implied at law. Count II alleged facts demonstrating that Chapman performed a service that benefitted defendants in that it maintained the Missouri wrongful death action for the benefit of decedent's heirs, namely, Karen Kitzman and defendants. It further alleged facts indicating that defendants accepted the benefit. Specifically, it alleged that Chapman met with defendants prior to filing the action and repeatedly communicated with defendants before procuring the settlement; meanwhile, defendants declined to hire another attorney to contribute to the negotiation and accomplishment of settlement. Finally, count II sufficiently alleges circumstances showing that Chapman's services were not intended to be gratuitous, as we can reasonably infer from the communications between Chapman and defendants that they were aware that Chapman, a professional corporation in the business of providing legal services for pay, was not representing defendants pro bono. Therefore, we reverse the circuit court's dismissal of count II.
For the foregoing reasons, the judgment of the Madison County Circuit Court is affirmed in part and reversed in part, and this cause is remanded with directions to proceed in accordance with this opinion.
Affirmed in part and reversed in part; cause remanded with directions.
HOPKINS and MAAG, JJ., concur.